855 A.2d 834

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William Joseph NOLAN, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 23, 2003.

Decided Aug. 19, 2004.

David W. Lupas, Wilkes Barre, Frank P. Barletta, Hazle-
ton, for Com. of PA.

William Joseph Nolan, appellee, pro se.

Before: CAPPY, C.J., and CASTILLE, NIGRO,
NEWMAN, SAYLOR, EAKIN and BAER, JJ.

302

Justice EAKIN.

Over a seven-month span, and in two separate counties, appellee and two accomplices stole more than 25 late-model vehicles. Appellee put the vehicles on a facially-legitimate car lot and sold them to unsuspecting victims. To accomplish the thefts, appellee typically targeted a dealership, where he would feign interest in a vehicle, and have an accomplice distract the salesperson while appellee wrote down the key code to the ignition. Later, appellee would go to a locksmith, have a key made based upon the key code number, and steal the vehicle after the dealership closed. Occasionally, he would simply test drive a vehicle and stop at the locksmith's shop to have a key made.

On March 21, 1991, appellee was arrested in Lackawanna County and charged with 15 counts each of theft by deception, receiving stolen property, criminal conspiracy, and dealing in vehicles with removed or falsified numbers.[1] These charges related only to those crimes taking place exclusively within Lackawanna County, as well, as one general conspiracy charge involving the car-stealing enterprise. On November 12, 1991, while incarcerated and awaiting disposition of his Lackawanna County charges, appellee was again arrested by Pennsylvania State Trooper Thomas Pavlick, and charged with those crimes which took place solely within Luzerne County. Trooper Pavlick and his partner conducted the investigation in both counties and recovered all the vehicles stolen and resold by appellee and his accomplices.

Pursuant to a plea agreement, appellee pled guilty in Lackawanna County to nine counts of receiving stolen property and one count of theft. At the guilty plea hearing, the Lackawanna County District Attorney acknowledged Luzerne County's interest in prosecuting appellee for those crimes committed there:

1. 18 Pa.C.S. § 3922; 18 Pa.C.S. § 3925; 18 Pa.C.S. § 903(a)(1); 75 Pa.C.S. § 7103 [repealed in 1998], respectively.

In addition, it's the position of the District Attorney's Office that there are collateral charges pending against Mr. Nolan in Luzerne County that emanate basically from the same set of circumstances and charges. For the Court's edification, they are basically charges of thefts of these automobiles either as a conspirator or as an accomplice or as a principle.

We have been in contact with Luzerne County. We don't have a specific agreement back, but it is our position in Lackawanna County that we would agree that either the Luzerne County sentencing process would take place and our sentencing process would be concurrent time and/or a corresponding agreement that Luzerne County's sentencing on any charges down there would be concurrent with Lackawanna time.

N.T. Guilty Plea, 3/3/92, at 4–5. Also during this guilty plea hearing, appellee's counsel (who coincidentally has the same last name as appellee) addressed the court expressing his desire for continued coordination between the two county prosecutors:

[Attorney] Nolan: Your Honor, with regard to the plea agreement, basically what the District Attorney has represented to the Court is correct. Today I had conversations with District Attorney Brier [Lackawanna County], in addition [to], District Attorney [elect] Michael Barrasse [Lackawanna County]. Late this afternoon we had conversations with Trooper Pavlick who's the principal affiant officer who is present here in Court. I was also present in the District Attorney's Office when our elected District Attorney Michael Barrasse placed a direct call to District Attorney Olszolszewski [sic] in Luzerne County. There were also representations made as District Attorney Brier has made to the Court with regard to the Luzerne County charges arising out of the same or similar circumstances. We believe that there was possibly at least a colorable argument of a double jeopardy [sic]. Indeed, it's possible that the Luzerne County charges may even be dropped depending [sic] Luzerne County District Attorney looking into that.

[Prosecutor]: That part I'm not aware of, just so the record is clear.

[Attorney] Nolan: We understand that, but I spoke to Trooper Pavlick concerning that.

* * *

There is a very legitimate and major concern on William Nolan's part. If he enters a guilty plea today and admits to certain actions regarding certain vehicles, he is always, exposed to the Court for want of a better way of saying it, out on a limb, in terms of working with the court and the Court would determine what the appropriate sentence would be and other factors. However, in addition to that, in this case if Mr. Nolan, William Nolan, pleads guilty today there is a conceivable scenario where the Luzerne County District Attorney could use his plea and omission of certain acts in trial against him on the theft charges of the same vehicles in Luzerne County.

* * *

However, there were representations made by District Attorney Brier down in the Lackawanna County District Attorney's Office and also down in the holding cell in the sherriff's that the Luzerne County charges would not present a problem to resolving all of the matters pending against William Nolan in Lackawanna and Luzerne County [sic].

* * *

I have absolutely no indication at all that the District Attorney's Office is not completely genuine in that effort. I really don't think Attorney Barrasse would have done that in front of me or permitted me to listen to his phone call if he wasn't serious about having a total cooperation in getting rid of all charges in both counties.

*Id.*, at 6–9, 24.

The elaborate deal-making also involved Trooper Pavlick, who appellee sued because of the arrests. Appellee then

offered to drop the civil suit in exchange for the Trooper's agreement to dismiss all the Luzerne County charges:

[Prosecutor]: Except that we can't ask them [Luzerne County] to drop the charges. I want that to be clear.

[Attorney] Nolan: That's been stated on the record. [Trooper Pavlick] has no authority to control what the District Attorney's Office in Luzerne County does. That's understood. He understands that.

The Court: That's understood and it's a private matter between Mr. Nolan and Mr. Pavlick. Mr. Nolan as part of this agreement will drop the charges against Mr. Pavlick. Officer Pavlick will ask for the cooperation of the District Attorney's Office down in Luzerne County to cooperate somehow. He can't ask him to withdraw the charges, he would be interfering.

[Attorney] Nolan: We understand that there's no promise that he specifically ask the charges be dropped, our understanding is that he is in good faith and is asking the Luzerne County District Attorney to resolve all charges with William Nolan.

[Prosecutor]: Right.

[Attorney] Nolan: In a reasonable matter.

[Prosecutor]: That's no problem.

The Court: And he's agreed to do that.

[Prosecutor]: That's part of the plea bargain.

The Court: And he indicated that earlier.

[Prosecutor]: That's part of the bargain and we want to do it that way.

*Id.,* at 28–29.

Adhering to the conditions of the plea agreement, but labeling him a "career criminal," the sentencing court in Lackawanna County imposed an aggregate sentence of 30 to 60 years imprisonment. The Luzerne Public Defender's Office was appointed to represent appellee, and on June 29, 1992, appellee signed a guilty plea agreement in that county following an in-court colloquy. However, on the day of sentencing,

appellee withdrew his guilty plea and requested a jury trial. Although he had been aware of the charges in both counties and worked out a deal for consideration by both prosecutors, on the first day of trial, counsel orally moved to have all the charges dismissed, arguing the Luzerne prosecution contravened double jeopardy tenets of the Pennsylvania and United States Constitutions [2], as well as 18 Pa.C.S. § 110 (the compulsory joinder rule).[3] The trial court granted the motion in part, dismissing all charges it found overlapped with the Lackawanna County prosecution. A Luzerne County jury convicted appellee of six counts of theft by unlawful taking[4] and five counts of receiving stolen property;[5] he was sentenced to an aggregate 21 to 42 years imprisonment, consecutive to his Lackawanna County sentence.

Dissatisfied with counsel's stewardship, appellee began filing *pro se* post sentence motions concurrently with counsel and amending those previously filed by counsel; the court disapproved of appellee's attempt at hybrid representation, *see Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 302

**2.** Pa. Const. art. I § 10; U.S. Const. amend. V, respectively.

**3.** Section 110 provides, in pertinent part:
§ 110. When prosecution barred by former prosecution for different offense. Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:
(i) any offense of which the defendant could have been convicted on the first prosecution;
(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or
(iii) the same conduct, unless . . .
18 Pa.C.S. § 110(1).

**4.** 18 Pa.C.S. § 3921(a).

**5.** 18 Pa.C.S. § 3925.

(1999) (no right to hybrid representation), and denied all motions. New counsel was appointed and appealed the Luzerne County judgment of sentence to the Superior Court, which affirmed in part and reversed in part. The Superior Court determined: (1) the Luzerne County prosecution included vehicles already charged in the Lackawanna County prosecution; and (2) the prosecution erroneously included an overarching conspiracy charge covering the entire illegal operation. The Superior Court reversed that portion of appellee's Luzerne County sentence, which it determined should have been dismissed by the trial court because it was duplicated from appellee's Lackawanna County prosecution. The Superior Court remanded the case for resentencing. *See Commonwealth v. Nolan*, 449 Pa.Super. 699, 673 A.2d 403 (1995). Appellee received the same aggregate sentence, 21 to 42 years, following remand; the sentences vacated by the Superior Court were initially concurrent sentences, and he received the same consecutive sentences as in the original. The Superior Court upheld appellee's modified sentences; he sought review from this Court.

Although this Court initially granted review, limited to an issue unrelated to appellee's present petition, it was thereafter dismissed as improvidently granted. *See Commonwealth v. Nolan*, 548 Pa. 572, 699 A.2d 731 (1997). Appellee then sought relief via the Post Conviction Relief Act, alleging counsel had been ineffective for failing to raise, on direct appeal, the issue of whether 18 Pa.C.S. § 110 required the dismissal of all Luzerne County charges. *See* 42 Pa.C.S § 9543. Counsel raised an issue related to § 110, but it was in reference to only one charge and not the prosecution as a whole.

Following several hearings, the PCRA court denied relief, finding appellee failed to demonstrate how his elaborate criminal operation, which transpired on different dates, with different victims, different police departments, and which was separately charged in different counties eight months apart, were "logically and temporally related" such as might constitute a single criminal episode. *See Commonwealth v. Hude*, 500 Pa.

482, 458 A.2d 177, 183 (1983) (at a minimum, § 110 requires events be "logically and temporally related").

The Superior Court reversed and remanded the case with instructions to dismiss the Luzerne County charges.[6] The Superior Court cited a substantial duplication of facts and legal issues which it held warranted a single trial. The court reasoned there was enough coordination between the two counties' prosecutors to require all charges being brought together by either, but not independently. The Court concluded "the prosecutions in Lackawanna and Luzerne Counties stemmed from the same criminal episode," and counsel was ineffective because he had no reasonable basis for failing to argue this issue on direct appeal. *Commonwealth v. Nolan*, No. 604 MDA 2000, unpublished memorandum at 11, 14, 788 A.2d 1032 (Pa.Super. filed September 7, 2001); *see Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987) (second component of ineffectiveness test is whether counsel's acts or omissions had reasonable basis or strategy). The Commonwealth appealed; this Court granted review to consider whether the offenses committed by appellee were part of the same criminal episode and required a single trial.

■■ The compulsory joinder rule bars a subsequent prosecution if each prong of the following test is met: (1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges were within the same judicial district as the former prosecution.[7] *See* 18 Pa.C.S.

6. There is some debate as to the legitimacy of appellee's PCRA petition. It was time-stamped September 21, 1998, which was just over one year after this Court dismissed his direct appeal. If this date is correct, appellee's PCRA petition should have been dismissed as untimely. *See* 42 Pa.C.S. § 9545(b)(3) (if sought, one-year limitation begins on date this Court denies review). Appellee contested the file-stamp date and alleged he filed the petition on September 14, 1998. The Superior Court accepted this date because "the Commonwealth has not challenged this assertion."

7. At the time appellee was convicted, prong four of the compulsory joinder test was "all charges were within the jurisdiction of a single

§ 110(1)(ii); *Commonwealth v. Anthony*, 553 Pa. 55, 717 A.2d 1015, 1018 (1998); *Commonwealth v. Hockenbury*, 549 Pa. 527, 701 A.2d 1334, 1337 (1997); *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755, 760 (1995). Because the Commonwealth conceded "[t]hree of the four requirements of Section 110(1)(ii) have been met," Appellant's brief, at 6, our analysis will pertain only to whether appellee's offenses arose out of a single criminal episode.

In the seminal case of *Hude*, courts were directed to look at the "logical and temporal relationship" between the criminal acts to determine whether they constituted the same "episode." In *Hude*, both prosecutions contained a substantial duplication of issues of fact and law, which not only forced a defendant to "run the gauntlet" repeated times and confront the "awesome resources of the state" successively, but also sanctioned "an unjustifiable expenditure of judicial resources." *Hude*, at 180, 183.

In later interpreting *Hude's* duplication guidance, this Court commented such an analysis cannot be made "by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged." *Bracalielly*, at 761. We have been mindful to reaffirm *Hude's* expressed warning against interpreting "the term 'single criminal episode'. . . [from a] hypertechnical and rigid perspective which defeats the purposes for which it was. created." *Hude*, at 183; *Bracalielly*, at 761; *see Commonwealth v. Pinkston*, 342 Pa.Super. 333, 492 A.2d 1146, 1149 (1985). This Court will temper such scrutiny against allowing defendants a "volume discount" on multiple crimes. *See Commonwealth v.*

court." However, in 2002, the General Assembly amended § 110 and replaced the quoted language with "occurred within the same judicial district as the former prosecution." P.L. 481, No. 82, § 1. This new language requires that a case must originate in the same judicial district and be further-prosecuted, based upon events from the same criminal episode, in the same judicial district. Appellee would not meet the requirements of this element had the current wording of the statute been in place at the time of his trial; Lackawanna County and Luzerne County are not in the same judicial district and a prosecution in one and then the other would not be contravened by § 110's current language.

*Anderson*, 538 Pa. 574, 650 A.2d 20, 22 (1994) (this Court will ward against permitting "volume discount").

While *Hude's* subjective "logical and temporal" inquiry has lead to numerous contradictory results when applied to varying factual scenarios,[8] what must be remembered is § 110's constant purpose and rationale. As delineated in *Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280 (2000): " § 110's compulsory joinder rule was designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment by being forced to undergo successive trials for offenses stemming from the same criminal episode, and (2) to ensure judicial economy." *Id.*, at 1285. These policy concerns must not be interpreted to sanction "volume discounting" or, as evidenced by this case, to label an "enterprise" an "episode." This Court has never categorized seven months of individual criminal activity, with distinct layers of illegality, as a single criminal episode; the purpose inherent in § 110 prevents such a result now. *See McPhail* (four separate drug buys to same officer over three months same episode); *Anthony* (five days of successive criminal activity one episode); *Hude* (20 days of drug sales same criminal episode).

Although *McPhail* designated three months of activity a single episode, that case involved one defendant selling drugs to one undercover officer; the officer was the major mover in the determination of the conduct, its extent, jurisdiction and venue, and potential mandatory penalties. Additionally, in *McPhail*, the "Commonwealth conced[ed] that all the offenses arose from the same criminal episode." *McPhail*, at 141.

**8.** *See Anthony,* at 1019 ("dual involvement of two different law enforcement offices is not sufficient to preclude joinder"); *cf. Bracalielly,* at 762 (dispositive factor defeating joinder was *"independent* involvement of two distinct law enforcement entities") (emphasis in original); *see Commonwealth v. McPhail,* 547 Pa. 519, 692 A.2d 139, 141 (1997) (plurality) (applying *Hude,* "separate trials would involve substantial duplication and waste of judicial resources."); *cf. Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1158–59 (2000) (although substantial duplication of testimony, different victims and necessity of establishing separate chains of custody negate compulsory joinder); *Hockenbury,* at 1337 (similarities between crimes *de minimis* and not requiring joinder where "receipt of entirely different stolen property").

Here, over a seven-month period, appellee ran a profitable enterprise in which he stole at least 25 vehicles from numerous individuals and 11 dealerships and then resold them, creating even more victims. Much like a television sitcom, each week's story has similar characters, producers, and continuity of storyline, but each week is a separate episode—the series of episodes is an enterprise. Such is the scenario here; appellee starred in his own series with multiple episodes in each county.

In *Commonwealth v. Cicconi*, 439 Pa.Super. 81, 653 A.2d 40 (1995), the Superior Court refused to reverse a subsequent trial where the defendant either requested separate trials, or he knowingly acquiesced to separate trials in what appeared to be an advantageous separation. The Superior Court reasoned:

> So long as two prosecutions are pending concurrently, and neither has gone beyond the stage at which joinder would be inappropriate or impermissible, the accused has an adequate remedy for his problem in seeking joinder of the offenses. If the accused does not request that the offenses be joined, it is fair to conclude that he has waived a claim that Section 110 of the Crimes Code has been violated. On the other hand, it is unfair to dismiss charges for serious offenses on the basis of presumed protections which the accused has not lifted a finger to exercise, especially since the accused is often in a better position to know of a potential conflict with Section 110 of the Crimes Code than the Commonwealth.

*Cicconi*, at 43 (quoting *Commonwealth v. Carelli*, 291 Pa.Super. 502, 436 A.2d 228, 232 (1981)); *see Commonwealth v. Hockenbury*, 446 Pa.Super. 593, 667 A.2d 1135, 1140 n. 7 (1995) (if accused aware of prosecutions pending in separate jurisdictions, failure to move for consolidation constitutes waiver of Section 110 claim). The *Cicconi* Court refused to sanction the defendant's "procedural maneuvering" and held his later complaint of compulsory joinder was rooted in his "desire to escape [legitimate] prosecution." *Id.*, at 44.

"Procedural maneuvering" was also rejected in *Commonwealth v. Gimbara*, 835 A.2d 371 (Pa.Super.2003), where the defendant was charged with speeding and driving under a license suspension. The defendant simultaneously mailed a guilty plea to the charge of speeding, and not guilty to the suspension charge, demanding a jury trial. Prior to this requested trial date, the defendant moved to disqualify the trial on the grounds it contravened § 110, because he already pled guilty to an offense which arose out of the same criminal episode. The Superior Court properly rejected this creative interpretation of the statute, but such case highlights the necessity of looking to the purpose inherent in § 110 and protecting against disingenuous, after-the-fact maneuvering.

Here, appellee acquiesced to the separate prosecutions,[9] and signed separate negotiated guilty pleas, in consideration for coordination and proposed leniency by each prosecutor. As quoted above, the prosecutors from Lackawanna and Luzerne Counties worked out an agreement where each would request concurrent sentencing for both prosecutions; appellee was active and sought to benefit from this deal-making. It was only when the Lackawanna County court sentenced appellee to multiple consecutive terms, after seeing appellee's significant criminal history and labeling him a "career criminal," that he withdrew his Luzerne County guilty plea and cried foul.

**9.** In *Commonwealth v. Failor*, 564 Pa. 642, 770 A.2d 310 (2001), appellants argued § 110 prohibited the Commonwealth from separately prosecuting them for driving under a license suspension and speeding, as both charges arose from the same criminal episode, a single traffic stop in the same jurisdiction. This Court agreed and reversed their second prosecutions, determining the charges should have been consolidated because all four prongs of the compulsory joinder rule had been satisfied. Additionally, this Court emphasized that the appellants' "mere silence" was insufficient to find they had waived a § 110 violation because "the burden to protect a defendant from vexatious litigation and to conserve judicial resources rests squarely on the shoulders of the Commonwealth." *Id.*, at 314.

Here, there was no single criminal episode, there was not "mere silence" by appellee, nor was there any limit of "vexatious litigation" by the Commonwealth. As evidenced by the guilty plea hearing, appellee stood to benefit from separate prosecutions and worked to forge a particularly advantageous deal that would have resulted in concurrent time. The judge in Lackawanna County stated he was "bound" by Nolan's bi-county deal. N.T. Guilty Plea, 3/3/92, at 32.

Each prosecutor, however, upheld its agreement; appellee's attempt to cast a bargained-for deal into an ineffectiveness claim rings hollow.

In sum, appellee's conduct and multifaceted illegal operation did not constitute a single criminal episode; the Superior Court incorrectly confused an enterprise with an episode. Consequently, counsel was not ineffective for failing to raise § 110 on direct appeal because the claim would have been unfounded. *See Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575, 587 (1991) (counsel cannot be ineffective for failing to assert meritless claim). We reverse the order of the Superior Court.

Jurisdiction relinquished.

Justice NEWMAN and Justices SAYLOR and BAER concur in the result.