**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**William Anthony REID, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 20, 2011.
Filed Jan. 4, 2012.

---

James P. Barker, Assistant District Attorney, Harrisburg, for Commonwealth, appellant.

Patrick A. Johnson, Public Defender, Lock Haven, for appellee.

BEFORE: STEVENS, P.J., BENDER, and PANELLA, JJ.

OPINION BY STEVENS, P.J.:

The Commonwealth of Pennsylvania files this appeal from the order entered in the Clinton County Court of Common Pleas, which dismissed, pursuant to Section 110 of the Pennsylvania Crimes Code, two charges of unlawful delivery of or possession with intent to deliver a controlled substance ("PWID") and one count of criminal conspiracy charged against Appellee, William Anthony Reid. We hold that Appellee's alleged involvement in the criminal enterprise for the case *sub judice*, which involved a broad, drug-distribution ring, does not constitute the same criminal episode as a previous prosecution for a single, controlled buy involving Appellee. Accordingly, we reverse.

Appellee's direct involvement with police began in November 2006, when police conducted a controlled buy through a confidential informant, who called Appellee and arranged to purchase cocaine from him. The informant picked up Appellee in the informant's car, then drove to the Hilltop Bar, where they parked for two minutes. The informant dropped Appellee off at a plaza and gave police the cocaine purchased from Appellee.

Due to a number of circumstances, police did not arrest Appellee immediately. In March 2007, however, police encountered Appellee when he was the victim of a kidnapping. Detective Charles Shoemaker, who assisted in the 2006 controlled buy, interviewed Appellee and informed him about the 2006 investigation. Appellee eventually confessed to his involvement in

selling drugs as part of a larger criminal enterprise, with his source of cocaine coming from New Jersey. Police soon charged Appellee with possession with intent to deliver ("PWID"),[1] and on June 25, 2007, Appellee pleaded guilty to that charge at case number CP–18–0000079–2007 ("Case 79").

Prior to the controlled buy, Detective Shoemaker was involved in a larger-scale investigation targeting another seller, Damon Williams. This broader investigation largely began in August of 2006, when Williams was arrested. After the arrest, the Commonwealth investigated Williams's involvement in a larger drug-trafficking scheme. The investigation culminated in a grand jury investigation, which found Appellee to be one of the distributors in a cocaine trafficking organization. The grand jury presentment of March 11, 2009, specifically found that Appellee sold cocaine at his house and in bars, specifically mentioning the Two Tuesdays bar.[2] The presentment also noted that Appellee would, at times, have a "middleman" deliver the cocaine when buyers purchased it from Appellee. Although the presentment cited controlled buys involving another distributor in the trafficking organization, the presentment did not mention the November 2006 controlled buy, nor did it mention the Hilltop Bar or any controlled buys involving Appellee.[3]

The grand jury presentment is the basis for the charges in the case *sub judice*, CP–18–0000264–2010 ("Case 264"). Although the criminal information in Case 264 charged Appellee with two counts of PWID and one count of conspiracy[4] for acts occurring "between 2006 through 2007," the Commonwealth later clarified that the time period is between sometime in 2006 until March 7, 2007.[5] N.T., 8/30/10, at 19. Appellee filed a motion to dismiss the charges at Case 264, pursuant to Section 110 of the Pennsylvania Crimes Code.[6] After a hearing and receiving briefs, the trial court granted Appellee's motion and dismissed the charges. The Commonwealth followed with this timely appeal.[7]

The Commonwealth argues that the charges *sub judice*, from Case 264, are not logically related to the charges from Case 79. The Commonwealth contends that the facts, evidence, and witnesses are substantially different between the two cases because Case 264 involves a much broader scope of activity than that of Case 79. The Commonwealth claims the only primary similarity in the two cases is that they overlap in time, with Case 79 having occurred sometime within the scope of the Case–264 investigation. The Commonwealth further suggests that the opinions relied upon by the trial court are substantially distinguishable from the case *sub*

---

1. 35 P.S. § 780–113(a)(30). Another charge of PWID and a charge of criminal use of communication facility, 18 Pa.C.S. § 7512(a), were dismissed.

2. Two Tuesdays was the primary target of the investigation, as it was the bar where many of Appellee's co-defendants conducted their transactions.

3. Specifically, the grand jury found that five controlled buys were made with this distributor.

4. 18 Pa.C.S. § 903.

5. Appellant was incarcerated, based on the charges from Case 79, from March 7, 2007, through the end of the year.

6. 18 Pa.C.S. § 110 ("When prosecution barred by former prosecution for different offense").

7. The Commonwealth complied with the court's order for a Pa.R.A.P.1925(b) statement, and the trial court filed a responsive opinion.

*judice* and do not mandate dismissal of the charges from Case 264. The Commonwealth concludes that the trial court erred in granting Appellee's motion to dismiss the charges. We agree.

"Our standard of review of issues concerning section 110 is plenary." *Commonwealth v. Simmer,* 814 A.2d 696, 698 (Pa.Super.2002). Section 110(1)(ii) provides:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 [8] of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:
>
> \*    \*    \*
>
> (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense. . . .

18 Pa.C.S. § 110(1)(ii).

■ The trial court, the Commonwealth, and Appellee agree that the test as stated by our Supreme Court in *Commonwealth v. Fithian,* 599 Pa. 180, 961 A.2d 66 (2008), applies. *Fithian* states that in order for a former prosecution to bar a subsequent prosecution pursuant to Section 110, the following four elements are required:

> (1) the former prosecution must have resulted in an acquittal or conviction;
>
> (2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;
>
> (3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and
>
> (4) the current offense occurred within the same judicial district as the former prosecution.

*Id.* at 191, 961 A.2d at 72.

"The purpose of the compulsory joinder statute . . . is twofold: (1) to protect a defendant from 'the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode;' and (2) to ensure 'finality without unduly burdening the judicial process by repetitious litigation.' " *Id.* at 197, 961 A.2d at 75–76 (quoting *Commonwealth v. Failor,* 564 Pa. 642, 647, 770 A.2d 310, 313 (2001)). However, "[t]hese policy concerns must not be interpreted to sanction 'volume discounting.' " *Commonwealth v. Nolan,* 579 Pa. 300, 310, 855 A.2d 834, 840 (2004). In so analyzing, our courts must be careful not "to label an 'enterprise' an 'episode.' " *Id.*

In large part, the parties agree that elements one and four of the *Fithian* test are met in the case *sub judice.* The Commonwealth makes no substantial effort to argue that element three applies, either. The focus, rather, is on whether Case 79 and Case 264 arose from the same criminal episode in relation to element two. We

---

8. Section 109 defines a former prosecution resulting in a conviction, in relevant part, as follows: "There is a conviction if the prosecu-tion resulted in . . . a plea of guilty accepted by the court." 18 Pa.C.S. § 109(3).

will therefore proceed to analyze element two.

Our Supreme Court in *Nolan* observed the following:

> In the seminal case of [*Commonwealth v.*] *Hude,* [500 Pa. 482, 458 A.2d 177 (1983),] courts were directed to look at the "logical and temporal relationship" between the criminal acts to determine whether they constituted the same "episode." In *Hude,* both prosecutions contained a substantial duplication of issues of fact and law, which not only forced a defendant to "run the gauntlet" repeated times and confront the "awesome resources of the state" successively, but also sanctioned "an unjustifiable expenditure of judicial resources." *Hude,* at 180, 182.
>
> In later interpreting *Hude*'s duplication guidance, [the Pennsylvania Supreme] Court commented such an analysis cannot be made "by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged." [*Commonwealth v.*] *Bracalielly,* [540 Pa. 460, 658 A.2d 755,] 761 [ (1995) ]. We have been mindful to reaffirm *Hude*'s expressed warning against interpreting "the term 'single criminal episode' … [from a] hypertechnical and rigid perspective which defeats the purposes for which it was created." *Hude,* at 183; *Bracalielly,* at 761; *see Commonwealth v. Pinkston,* [ 342 Pa.Super. 333], 492 A.2d 1146, 1149 ( [Pa.Super.]1985).

*Nolan,* 579 Pa. at 309, 855 A.2d at 839.

■ The Commonwealth concedes that a temporal relationship exists between Case 79 and Case 264. Commonwealth's Brief at 14. The Commonwealth, however, instead avers that a sufficient logical relationship does not exist to warrant Section 110 dismissal. The trial court disagreed, according great weight to Appellant's confession in Case 79 that he was importing cocaine from New Jersey and selling it in Clinton County, including to people named as co-defendants in Case 264.

In so holding, the trial court compared Case 264 to this Court's decision in *Commonwealth v. Rocco,* 375 Pa.Super. 330, 544 A.2d 496 (1988). In *Rocco,* a panel of this Court examined a case in which a confidential informant purchased methamphetamine from the appellant in June 1984, cocaine from the appellant in August 1984, and cocaine from a different individual in September 1984, but in the appellant's presence in the appellant's home. *Id.* at 497. Although the *Rocco* Court addressed the issue pursuant to Section 780–117 of The Controlled Substance, Drug, Device and Cosmetic Act,[9] the Court also opined:

> [A]ll of the charges brought against appellant arose out of the same factual nucleus. The discovery of the acts of appellant were obtained through a continuing undercover investigation by one team of prosecutorial agents. All the information relating to the present charges was available to the prosecution at the time the prior charges were filed. As such, the illegal conduct constituted a single criminal episode, which would have been subject to compulsory joinder had all of the charges been filed at one time.

*Id.* at 500 (citing 18 Pa.C.S. § 110; *Hude, supra; Commonwealth v. Kaminski,* 342 Pa.Super. 37, 492 A.2d 51 (1985)).

The trial court also relied on this Court's decision in *Commonwealth v. Kaminski,* 342 Pa.Super. 37, 492 A.2d 51 (1985), in which the appellant was initially convicted

---

9. 35 P.S. §§ 780–101 to –144.

of selling cocaine to an undercover officer, then later charged with selling cocaine three days later to the same undercover officer. *Id.* at 52. A panel of this Court concluded that "the instant drug sales involve the same type of contraband and were made to a single individual ... [and] the elapsed time between sales was only three days...." *Id.*

However, we find our Supreme Court's discussion in *Nolan, supra,* significantly more instructive. In *Nolan,* our Supreme Court applied *Hude, supra,* to the case of an appellant who was accused of multiple car thefts in Luzerne and Lackawanna Counties, and who had charges filed against him in both counties by the same investigating Pennsylvania State Trooper. *Nolan,* 579 Pa. at 302, 855 A.2d at 835. As explained by the *Nolan* Court:

> [Nolan] put the [stolen] vehicles on a facially-legitimate car lot and sold them to unsuspecting victims. To accomplish the thefts, [Nolan] typically targeted a dealership, where he would feign interest in a vehicle, and have an accomplice distract the salesperson while [Nolan] wrote down the key code to the ignition. Later, [Nolan] would go to a locksmith, have a key made based upon the key code number, and steal the vehicle after the dealership closed. Occasionally, he would simply test drive a vehicle and stop at the locksmith's shop to have a key made.

*Id.*

Although this Court in both *Rocco* and *Kaminski* similarly relied on *Hude,* the *Nolan* Court clarified that courts must be careful not to classify an enterprise as an episode:

These [Section 110] policy concerns must not be interpreted to sanction "volume discounting" or, as evidenced by this case, to label an "enterprise" an "episode." [The Pennsylvania Supreme] Court has never categorized seven months of individual criminal activity, with distinct layers of illegality, as a single criminal episode; the purpose inherent in § 110 prevents such a result now.

Although [*Commonwealth v.*] *McPhail*[, 547 Pa. 519, 692 A.2d 139 (1997) (plurality)] designated three months of activity a single episode, that case involved one defendant selling drugs to one undercover officer; the officer was the major mover in the determination of the conduct, its extent, jurisdiction and venue, and potential mandatory penalties. Additionally, in *McPhail,* the "Commonwealth conced[ed] that all the offenses arose from the same criminal episode." *McPhail,* at 141. Here, over a seven-month period, appellee ran a profitable enterprise in which he stole at least 25 vehicles from numerous individuals and 11 dealerships and then resold them, creating even more victims. Much like a television sitcom, each week's story has similar characters, producers, and continuity of storyline, but each week is a separate episode—the series of episodes is an enterprise. Such is the scenario here; appellee starred in his own series with multiple episodes in each county.

*Nolan,* 579 Pa. at 310–11, 855 A.2d at 840.[10]

---

**10.** The *Nolan* Court also observed that Nolan engaged in what it considered "procedural maneuvering," which is not the case instantly. *Id.* at 312–13, 855 A.2d at 841. We further note that the Court reviewed Nolan's claim in the context of an ineffective-counsel claim on collateral review. *Id.* at 307, 855 A.2d at 838. Nonetheless, the Court explicitly held that "[Nolan]'s conduct and multifaceted illegal operation did not constitute a single criminal

In the case *sub judice*, we similarly conclude that the facts at issue indicate a criminal enterprise rather than a single criminal episode. The grand jury presentment referenced Appellee's activities at his house and bars separate from the Hilltop Bar, where the controlled buy took place. The presentment did not reference the controlled buy, however. Further, there is no indication that the confidential informant from the controlled buy was the same "victim" or "major mover" as in Case 264. *Compare id.*, *with Kaminski, supra* (involving sales of the same contraband to the same "victim," an undercover officer, within a span of three days); *Rocco, supra* (involving one continuous undercover investigation in regard to the same confidential informant, *i.e.* "victim," purchasing contraband from either the defendant or the defendant's cohort in the defendant's home and in the defendant's presence). Although Appellee's methods of delivery and his sources for contraband may have largely been the same in both cases, and may have involved the same investigating officer, there appear to be different "victims" and "major movers" in each case. Moreover, the grand jury presentment specifically referenced Appellee's occasional use of a middleman to conduct his deliveries rather than by Appellee himself, as occurred in the controlled buy. We therefore consider these facts to be multiple episodes of the same enterprise, rather than one continuous criminal episode. *See Nolan, supra* (finding one criminal enterprise, but not a singular, continuous, crimi-

nal episode where the defendant and his accomplice operated the same car-theft procedure multiple times and charges were brought by the same investigating officer, but the incidents took place in multiple locations at different times with different victims).

Accordingly, the trial court erred in granting Appellee's motion to dismiss pursuant to Section 110. Upon remand, the trial court is instructed to reinstate the charges from Case 264.[11]

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

---

episode; the Superior Court incorrectly confused an enterprise with an episode." *Id.* at 313, 855 A.2d at 841.

11. Of course, upon reinstatement of the charges, the Commonwealth may not pursue charges related to the controlled buy. We further observe it appears unlikely that any other transactions referenced in the presentment involve the same confidential informant through a controlled buy, as Detective Shoe-

maker testified that the informant stopped cooperating with police after the controlled buy. N.T., 8/30/10, at 22. To the extent, however, that other transactions in Case 264 may involve Detective Shoemaker's working with the same confidential informant to conduct separate controlled buys from Appellee, the trial court shall re-assess the charges and conduct a new Section 110 analysis.