J-A28015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                   :           PENNSYLVANIA
                                   :

               v.                    :
                                   :
                                   :

MICHELE R. DAVIS              :
                                   :

          Appellant          :       No. 625 MDA 2018

Appeal from the Judgment of Sentence Entered January 4, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003961-2017

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:        **FILED: AUGUST 22, 2019**

Appellant, Michele R. Davis, appeals from the judgment of sentence entered on January 4, 2018 in the Criminal Division of the Court of Common Pleas of Berks County. We affirm.

The events giving rise to this appeal occurred on August 12 and 13, 2017 in Boyertown and New Berlinville, Pennsylvania.[1] At approximately 11:45 p.m. on August 12, 2017, Officer Michael Hoppes of the Boyertown Police Department discovered Appellant in a heavily intoxicated state in a parking lot outside of an establishment in Boyertown, Pennsylvania. Officer Hoppes summoned Officer Matthew Merry of the Colebrookdale Township Police Department for assistance. When Officer Merry arrived on-scene, Officer Hoppes cited Appellant for public drunkenness in violation of 18

_____

[1] Both municipalities are located in Berks County, Pennsylvania.

Pa.C.S.A. § 5505. After issuing the citation, the officers elected to transport Appellant to her mother's residence in New Berlinville, Pennsylvania.

The officers and Appellant arrived at Appellant's mother's home at around 12:15 a.m. on August 13, 2017. Upon arrival, the officers escorted Appellant to the front door and Appellant entered the residence. The officers remained at the entryway, explaining the citation to Appellant's mother. As the three discussed Appellant's citation, Appellant returned to the front door and began yelling at the officers. The officers directed Appellant to stop screaming and to get back inside the residence.

As the officers walked away from the home, Appellant followed and continued to yell at them. When Appellant persisted, Officer Merry pinned her to the ground and handcuffed her. Officer Merry then walked Appellant to his police cruiser and attempted to place her into the vehicle. When Appellant refused to cooperate, Officer Hoppes assisted Officer Merry by dragging Appellant into the backseat of the patrol car.

On August 14, 2017, Officer Hoppes filed Appellant's summary citation for public drunkenness. This citation, docketed at MJ-23302-NT-0000309-2017 (and referred to herein as "Case 1"), was adjudicated by a magistrate judge who imposed a sentence of time served after Appellant pled guilty on August 16, 2017.[2] To reiterate, the events giving

---

[2] As of the date of disposition, Appellant had served two days of confinement.

rise to the charge leveled in Case 1 stemmed from Officer Hoppes' discovery of Appellant in an inebriated state in the Boyertown parking lot.

On August 13, 2017, one day prior to the filing of Appellant's summary citation in Case 1, Officer Merry filed criminal charges against Appellant which accused her of resisting arrest (18 Pa.C.S.A. § 5104), disorderly conduct (18 Pa.C.S.A. § 5503(a)(3)), and public drunkenness (18 Pa.C.S.A. § 5505). These charges, hereinafter referred to as "Case 2," arose from events that occurred at the home of Appellant's mother. On August 16, 2017, Appellant waived her preliminary hearing on the charges filed at Case 2 before the same magistrate judge who presided over Case 1. Thus, Appellant's resisting arrest and related charges proceeded to the Court of Common Pleas and were docketed at CP-06-CR-0003961-2017. The Commonwealth filed its information in Case 2 on September 19, 2017.

The trial court appointed a public defender to represent Appellant and, on November 2, 2017, counsel filed an omnibus pre-trial motion asserting that double jeopardy and compulsory joinder barred prosecution of the charges filed in Case 2. *See* Omnibus Pre-Trial Motion, 11/2/17, at 3 (unpaginated), *citing* U.S. Const. amend. V, Pa. Const. Art. I Sec. 10, and 18 Pa.C.S.A. § 110(1)(ii). The trial court convened a hearing on the motion on December 4, 2017.

On January 4, 2018, Appellant pled *nolo contendere* to the charge of resisting arrest at Case 2 and the Commonwealth dismissed the charges of disorderly conduct and public drunkenness. Thereafter, the trial court

sentenced Appellant to four to 24 months' incarceration with 140 days credit for time served. In addition, the court denied Appellant's double jeopardy and compulsory joinder claims.

Appellant was immediately transferred from Berks County Prison to SCI-Muncy following pronouncement of her judgment of sentence. On January 13, 2018, Appellant prepared a *pro se* letter entitled, "Letter Re: Post Sentence Motion," in which she requested relief in the form of a modification of her sentence.[3] This submission was docketed in the trial court on January 18, 2018. Counsel for Appellant received the submission on January 22, 2018 and, thereafter, filed a motion to seek post-sentence relief *nunc pro tunc*, together with a proposed post-sentence motion, on January 23, 2018. At a hearing on February 26, 2018, the trial court granted Appellant's counseled motion to file a post-sentence motion *nunc pro tunc*. By order entered on March 13, 2018, however, the trial court denied Appellant's counseled post-sentence motion. Counsel then filed a notice of appeal on April 12, 2018 and the trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on June 22, 2018.

By order entered on June 25, 2018, this Court directed Appellant to show cause why this appeal should not be dismissed as untimely since her April 12, 2018 notice of appeal was filed more than 30 days after the

---

[3] On the same day, Appellant prepared a letter to counsel in the public defender's office in which she requested that counsel file a post-sentence motion and an appeal from her judgment of sentence.

- 4 -

imposition of the judgment of sentence on January 4, 2018 and her counseled post-sentence motion, which was untimely filed on January 23, 2018, did not toll the appeal period. Appellant filed a timely response to our show cause order on July 5, 2018. On July 9, 2018, we discharged our show cause order and the timeliness of this appeal was referred to this panel for review.

Appellant raises a single question for our consideration.[4]

> Whether the trial court erred in denying Appellant's omnibus pre-trial motion to dismiss on double jeopardy grounds when it decided that the disputed charges were not part of the "same criminal episode."

Appellant's Brief at 6.

Before we address Appellant's substantive appellate claim, we must consider the issue that was referred to this panel, *to-wit* whether this appeal should be quashed because it was not timely filed. "In order to perfect a timely appeal, a defendant must file a notice of appeal within 30 days of the imposition of [her] sentence, unless [she] files a timely post-sentence motion within 10 days of sentencing, thereby tolling that 30–day window." ***Commonwealth v. Leatherby***, 116 A.3d 73, 78 (Pa. Super. 2015), *citing* Pa.R.A.P. § 903 and Pa.R.Crim.P. 720(A).

---

[4] Appellant's brief lists a second question in which she alleges that the trial court abused its discretion by imposing a manifestly unjust and unreasonable sentence that would significantly impact her state parole from a 2015 conviction. ***See*** Appellant's Brief at 6. Appellant's counsel conceded, however, that she is unable to develop a meritorious argument in support of this claim; hence, it has been withdrawn. ***See id***.

The Commonwealth argues that the instant appeal should be quashed because Appellant's untimely post-sentence motion did not toll the appeal period and her notice of appeal was docketed more than 30 days after the imposition of her sentence. *See* Commonwealth's Brief at 6. In *Commonwealth v. Dreves*, 839 A.2d 1122, 1128 (Pa. Super. 2003) (*en banc*), this Court held that a post-sentence motion filed *nunc pro tunc* tolls the appeal period only where each of two conditions are met. First, within 30 days of the imposition of sentence, a defendant must ask the trial court to consider a post-sentence *nunc pro tunc*. *See id*. Second, "[if, within 30 days of the imposition of sentence,] the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc*, the court must do so expressly." *Id*. Here, the trial court imposed its sentence on January 4, 2018 and counsel moved to file a *nunc pro tunc* post-sentence motion on January 23, 2018. Hence, the first requirement identified in *Dreves* has been satisfied. The court, however, did not grant counsel's motion until February 26, 2018, more than 30 days after the pronouncement of sentence. The Commonwealth concludes that the failure to comply with the second requirement announced in *Dreves* renders the instant appeal untimely and subject to quashal.

Appellant's response to our show cause order contends that this appeal should not be quashed as untimely. Citing her *pro se* correspondence dated January 13, 2018, Appellant argues that the letter "was in fact a [post-sentence motion] that she filed *pro se* as a last resort." Appellant's

Response to Rule to Show Cause, 7/5/18, at 4 para. 14. Specifically, Appellant avers that, after the trial court imposed its sentence, she was immediately transferred to SCI-Muncy where prison intake and processing policies severely hampered her ability to communicate with outsiders, including her attorney and the court, during the transition period. *See id*. at 4-5. In view of these circumstances, Appellant maintains that her *pro se* submission should be considered a timely post-sentence motion which tolled the appeal period pursuant to Pa.R.Crim.P. 720(A).[5] Because Appellant filed her April 12, 2018 notice of appeal within 30 days of March 13, 2018, the date the trial court decided Appellant's post-sentence motion, Appellant concludes that her appeal is timely.

Owing to Pennsylvania's prohibition against hybrid representation, *pro se* post-sentence motions filed when counsel remains attached to a case are generally deemed to be legal nullities. *See Commonwealth v. Reid*, 117 A.3d 777, 781 n.8 (Pa. Super. 2015) (*pro se* post-sentence motion filed while defendant represented by counsel is a legal nullity); *Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007) (same). In certain

---

[5] Because the trial court sentenced Appellant on January 4, 2018, a timely post sentence motion was due no later than January 15, 2018, since the tenth day of the period fell on a Sunday. *See* 1 Pa.C.S.A. § 1908 (calculation of time for filing). Since Appellant's *pro se* submission is dated January 13, 2018, it would be timely under the prisoner mailbox rule. *See Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011) ("prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date [s]he delivers it to prison authorities for mailing").

circumstances, however, this Court has departed from a strict application of the principle against hybrid representation where a breakdown in the judicial system has occurred and a represented litigant has acted in his own behalf to preserve constitutional rights. We detail two examples below.

In **Leatherby**, **supra**, Leatherby's retained counsel stated at sentencing that Leatherby could no longer afford his services. Consequently, counsel asked the trial court to appoint a new attorney. To facilitate the transition to new counsel, retained counsel agreed on the record to file a post-sentence motion on Leatherby's behalf within ten days. Contrary to his promise, however, retained counsel never filed a post-sentence motion within ten days of sentencing to toll the 30-day appeal period. Retained counsel also failed to file a notice of appeal. Furthermore, the trial court did not appoint new counsel until ten days after the imposition of sentence. In the interim, Leatherby filed a *pro se* post-sentence motion within the ten-day period after sentencing to preserve his appellate rights. The Commonwealth claimed that Leatherby's *pro se* motion constituted improper hybrid representation and, thus, should be considered a nullity which did not toll the appeal period.

Notwithstanding the Commonwealth's contentions, we held that Leatherby's *pro se* filing did not offend considerations of hybrid representation and was effective in tolling the time in which to file an appeal. We noted initially the confusion as to who would file post-sentence motions on Leatherby's behalf and retained counsel's failure to file those motions despite

his promise to do so. We also noted the trial court's failure to appoint new counsel in time to preserve Leatherby's post-sentence rights. Under the circumstances (which we equated with an administrative breakdown on the part of the trial court), we concluded that Leatherby's *pro se* filing did not offend considerations of hybrid representation since retained counsel effectively abandoned him and the trial court failed to designate new counsel in a timely manner. Hence, we held that Leatherby's *pro se* post-sentence motion was effective in tolling the appeal period and that the appeal was therefore timely lodged.

Similarly, we relied upon a *pro se* notice of appeal, forwarded by a represented litigant, to find an appeal timely filed in **Commonwealth v. Williams**, 151 A.3d 621 (Pa. Super. 2016). There, Williams was resentenced by the trial court on October 16, 2015. Following resentencing, counsel for Williams filed a post-sentence motion on October 26, 2015. The court denied that motion by order entered on October 29, 2015. Williams then had 30 days, or until Monday, November 30, 2015, to file a timely notice of appeal. **See** Pa.R.A.P. 903; Pa.R.Crim.P. 720(A)(2)(a); 1 Pa.C.S.A. § 1908.

Williams filed a *pro se* notice of appeal on November 19, 2015. Because Williams was represented by counsel, his *pro se* notice of appeal was docketed in the trial court and forwarded to counsel on November 25, 2015 pursuant to Pa.R.Crim.P. 576(A)(4). Williams' notice, however, was not forwarded to this

Court. Thereafter, counsel for Williams filed an untimely notice of appeal on December 1, 2015.

In these circumstances, we held that this Court is required to docket a *pro se* notice of appeal despite the appellant's representation by counsel and that the failure to forward the *pro se* notice from the trial court to this Court constituted a breakdown in the operation of the courts. **See Williams**, 151 A.3d at 624. Our decision relied in part on our Supreme Court's decision in **Commonwealth v. Ellis**, 626 A.2d 1137 (Pa. 1993), where the Court distinguished between overburdening appellate courts with *pro se* briefs and allowing for the protection of one's constitutional right to an appeal. We also cited Superior Court Operating Procedure § 65.24, which provides that a *pro se* notice of appeal received from the trial court must be docketed by the Superior Court, even where the *pro se* appellant is represented by counsel in the trial court. In view of this breakdown in the judicial system, we acknowledged Williams' *pro se* submission as a timely notice of appeal.

Although there is no evidence that counsel abandoned Appellant following the imposition of sentence, we nevertheless find that a breakdown in the court system permits us to treat Appellant's *pro se* submission as a timely post-sentence motion. On January 23, 2018, counsel for Appellant filed a request to file a post-sentence motion *nunc pro tunc*, together with a proposed post-sentence motion. As noted above, this request was filed within 30 days of the imposition of Appellant's sentence and, therefore, met the first

requirement articulated in **Dreves**. In addition, counsel's request explained that Appellant was sentenced on January 4, 2018 and that while a timely post-sentence motion must be filed within ten days of sentencing, **see** Pa.R.Crim.P. 720(A)(1), "a trial court may grant *nunc pro tunc* relief and allow a [d]efendant to file a post-sentence motion more than ten days after sentencing if such relief is [expressly] granted within 30 days of sentencing." Motion to File Post-Sentence Motion *Nunc Pro Tunc*, 1/23/18, at 1 para. 9, *citing* **Dreves**, 839 A.2d at 1128. Counsel also noted that the trial court had time to grant *nunc pro tunc* relief and explained that Appellant possessed just cause to seek such relief since her immediate transfer to state prison hampered her efforts to communicate with counsel within the ten-day period after sentencing.[6] **See** Motion to File Post-Sentence Motion *Nunc Pro Tunc*, 1/23/18, at 2 paras. 12 and 13(b). The trial court ultimately granted counsel's motion to seek post-sentence relief *nunc pro tunc* but not until the conclusion of a hearing on February 26, 2018, more than 30 days after the imposition of sentence. We deem the trial court's failure to act on counsel's timely motion seeking *nunc pro tunc* relief to be a breakdown in the operation of the courts, which should not foreclose appellate review. **See Leatherby**, 116 A.3d at 79 ("[An appellant] should not be precluded from appellate review based on what

---

[6] Appellant confirmed these allegations in her response to our show cause order and the Commonwealth has not contested her averments.

- 11 -

was, in effect, an administrative breakdown on the part of the trial court.").

Hence, we shall accept this appeal as timely.

We turn now to Appellant's substantive claim for appellate relief in which

she contends that, in view of her guilty plea to the summary citation for public

drunkenness filed in Case 1, the compulsory joinder rule found in 18 Pa.C.S.A.

§ 110(1)(ii) barred her prosecution and conviction for resisting arrest in Case

2.[7]

Section 110 of the Crimes Code codifies the compulsory joinder rule and

in relevant part provides:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> 1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> * * *
>
> (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred

---

[7] Appellant focuses her claim for relief on the compulsory joinder rule codified at § 110 since she concedes that her contentions do not meet the more rigorous standards incorporated under prevailing double jeopardy jurisprudence. **See** Appellant's Brief at 13 ("this appeal would not meet [the criteria for] Double Jeopardy as deciphered in **U.S. v. Blockburger**[, 284 U.S. 299 (1932)] and **U.S. v. Menna**[, 423 U.S. 61 (1975)]" which require an element-by-element analysis).

within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S.A. § 110(1)(ii).

Our Supreme Court has held that § 110(1)(ii) bars a subsequent prosecution whenever the following four-part test is met:

(1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges [are] within the same judicial district as the former prosecution.

*Commonwealth v. Reid*, 77 A.3d 579, 582 (Pa. 2013). The parties do not contest establishment of the first, third, and fourth prongs;[8] hence, we focus our analysis on whether the facts before us constitute a single criminal episode and whether the prosecution of the charges in Case 2 were based on the same criminal conduct involved in Case 1.

When considering whether offenses arose from a "single criminal episode" (also known as the "logical relationship prong"), courts must look to the temporal and logical relationship between the charges. *Reid*, 77 A.3d at

---

[8] As our recitation of the facts confirms, Appellant pled guilty and received a sentence for public drunkenness in Case 1 approximately five months before pleading *nolo contendere* to resisting arrest in Case 2. Also, the disposition of the charges filed in Case 1 and the preliminary hearing held in Case 2 occurred on the same day and before the same district judge; thus, the prosecution in Case 2 was aware of the charges filed in Case 1. Finally, all of the charges filed in Case 1 and Case 2 arose and were prosecuted within the same judicial district, Berks County.

582. Our Supreme Court offered the following guidance in assessing the logical relationship between offenses:

> In ascertaining whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require "an absolute identity of factual backgrounds."

*Commonwealth v. Hude*, 458 A.2d 177, 181 (Pa. 1983). "[M]ere *de minimis* duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. Rather, what is required is a substantial duplication of issues of law and fact." *Commonwealth v. Bracalielly*, 658 A.2d 755, 761 (Pa. 1995) (internal corrections omitted).

The Pennsylvania Supreme Court has repeatedly stressed the significance of a substantial duplication of issues of law and fact before a logical relationship can be found. In *Reid*, the Court said:

> We reiterate the determination of whether the logical relationship prong of the test is met turns on whether the offenses present a **substantial** duplication of issues of fact and law. Such a determination depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution. There is a substantial duplication of issues of fact if "the Commonwealth's case rest[s] solely upon the credibility of [one witness]" in both prosecutions. [*Hude*, 458 A.2d at 183]. There is no substantial duplication if "proof of each individual [offense requires the testimony of different police officers and witnesses at trial]." *Bracalielly*, [658 A.2d at 762.] When determining if there is a duplication of legal issues, a court should not limit its analysis to a mere comparison of the charges, but should also consider whether, despite "the variation in the form of the criminal

charges," there is a "commonality" of legal issues within the two prosecutions. [**Commonwealth v. Anthony**, 717 A.2d 1015 (Pa. 1998)]. It should be remembered, however, "[t]he mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds." **Hude**, [458 A.2d at 181] (citation and internal quotation marks omitted). Finally, in considering the temporal and logical relationship between criminal acts, [courts should be] guided by the policy considerations § 110 was designed to serve, which "must not be interpreted to sanction 'volume discounting[,]' [procedural maneuvering,] or ... to label an 'enterprise' an 'episode.'" [**Commonwealth v. Nolan**, 855 A.2d 834, 840 (Pa. 2004) (superseded by statute on other grounds)].

**Reid**, 77 A.3d at 585-586 (noting that "same criminal episode" analysis cannot be made "by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged but requires courts to determine whether there is a substantial duplication of issues of fact and law) (emphasis in original).

Appellant maintains that a single criminal episode occurred in this case because the events which led to her public drunkenness charge in Boyertown "fluidly streamed together" with subsequent events that gave rise to her resisting arrest charge in New Berlinville. **See** Appellant's Brief at 18. According to Appellant, substantial duplication of law and fact has been established because a single episode of alcohol consumption induced her heavily intoxicated state, which persisted through both events. **See id.** at 19. In Appellant's view, because her first drunken encounter led to an escalated, physical altercation with the police, the relevant events – which involved the same actors albeit in two different settings - formed a "coherent stream of

- 15 -

events" which must be viewed as a single criminal episode. *Id.* In addition, Appellant faults the trial court for applying Supreme Court precedent too rigidly in citing the passage of 30 minutes, the involvement of two local police departments, and Appellant's changing mental states as grounds for finding separate criminal episodes.

We are unpersuaded by Appellant's argument which asserts that § 110 bars the instant prosecution for resisting arrest because Appellant previously pled guilty to public drunkenness. Instead, we conclude that the two prosecutions arose from separate episodes that lacked the necessary logical relationship as demonstrated through substantial duplication of factual and legal issues. We explain.

Appellant places great emphasis on her contention that her initial consumption of alcohol at a bar in Boyertown caused her to become publicly intoxicated and, thereafter, to engage in a physical altercation with two law enforcement officers as they attempted to subdue her and place her into a police cruiser. As the Commonwealth correctly points out, however, "the mere fact that the events occurred on the same evening and were preceded by the same bout of drinking does not, by itself, have the effect of combining them into a single criminal episode." Commonwealth Brief at 12. The record confirms that the incidents *sub judice* took place at two distinct locations and were separated by approximately 30 minutes. In addition, there is no

substantial duplication of law and fact which is sufficient to show a logical relationship between the charged offenses.

The Crimes Code defines public drunkenness at 18 Pa.C.S.A. § 5505 and states:

> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act, except those taken pursuant to the lawful order of a practitioner, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity. A person convicted of violating this section may be sentenced to pay a fine of not more than $500 for the first violation and not more than $1,000 for the second and each subsequent violation.

18 Pa.C.S.A. § 5505.

If a summary trial on public drunkenness had occurred, the Commonwealth would have called Officers Hoppes and Merry to testify regarding their observations of Appellant exhibiting indicia of alcohol intoxication. In addition, to demonstrate that Appellant's intoxication made her a danger to herself, to others, or to property (or had the effect of annoying others in the vicinity), the Commonwealth may have called other witnesses who observed Appellant's actions before the arrival of the police. In sum, the testimony that would have been adduced in Case 1 naturally would have centered upon the nature and extent of Appellant's inebriation and the effects it had on her behavior. Although these issues were relevant to Case 1, they would not have been relevant to Case 2. Moreover, any non-police witnesses

- 17 -

present during the events of Case 1 would not have been present during the events of Case 2. Case 1, the prosecution of the public drunkenness charge against Appellant, therefore involved witnesses and issues that would not have been presented at a trial of Case 2.

The Crimes Code defines resisting arrest or other law enforcement at 18 Pa.C.S.A. § 5104 and states:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

If a trial on Appellant's resisting arrest charge had occurred, the Commonwealth would have had to establish that Officers Hoppes and Merry were attempting to effectuate a lawful arrest and that Appellant harbored the intent to prevent that arrest when she became combative and resisted the officers, or employed means that required substantial force to overcome. To prove these facts, the Commonwealth clearly would have called the officers but also may have called Appellant's mother to testify. The testimony of the witnesses in Case 2 would have focused on the circumstances leading to Appellant's arrest,[9] the resistance employed by Appellant, and force expended

---

[9] These circumstances occurred at the residence of Appellant's mother since the officers released Appellant into her mother's custody following the previous incident in Boyertown.

- 18 -

by the officers to overcome Appellant's resistance. Appellant's drunken state might explain why the events relevant to Case 2 occurred but it was entirely unnecessary to sustain a conviction. Again, the non-police witnesses, all of the testimony, and the issues relevant to Case 2 were vastly different from those in Case 1. As such, Appellant has not established substantial duplication of law and fact between the cases and therefore cannot establish the requisite logical relationship between the charges at Case 1 and Case 2.[10]

In sum, Appellant points to only minimal duplication of factual and legal issues. Although the same police officers witnessed the events in both cases, all non-law enforcement witnesses would have been entirely different. Moreover, while Appellant's intoxication was the focus of Case 1, it had no legal relevance in Case 2. For this reason, the substantive testimony from all witnesses would differ vastly in nature from Case 1 to Case 2. Because there was insufficient commonality between the prosecutions, no relief is warranted on Appellant's compulsory joinder claim.

Judgment of sentence affirmed.

---

[10] As we stated above, Appellant's theory is that her public drunkenness "flowed naturally" into an escalated physical altercation with law enforcement officials. While excessive intoxication might lead to any number of proscribed acts, it cannot operate as *carte blanche* for the defendant to commit offenses until he or she regains sobriety. Framed within the terminology of the prevailing legal principles, Appellant's intoxication does not give her a volume discount on crimes she commits while under the influence of alcohol. As an aside, there is no claim of procedural maneuvering on the part of the Commonwealth in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/22/2019</u>