COMMONWEALTH of Pennsylvania, Appellant

v.

Anthony Allen GEORGE, Appellee.

Superior Court of Pennsylvania.

Submitted Nov. 28, 2011.

Filed Feb. 15, 2012.

Kelley L. Nelson, Office of the Attorney General, Harrisburg, for Commonwealth, appellant.

John J. Brier, Moosic, for appellee.

BEFORE: BOWES, COLVILLE,* and FITZGERALD,** JJ.

OPINION BY BOWES, J.:

The Commonwealth of Pennsylvania appeals from the May 18, 2011 order dismissing two counts of corrupt organization and one count of criminal conspiracy to deliver cocaine, pursuant to 18 Pa.C.S. § 110, the compulsory joinder statute. After careful review, we affirm.

The trial court summarized the facts as follows:

The Defendant, Anthony George, street name "Tone," was arrested on September 20, 2007 by agents of the Attorney General's Office. The Defendant was charged with two counts of delivery of a controlled substance (cocaine) stemming from purchases made by a confidential informant on April 17, 2007 and May 18, 2007, as well as an additional delivery charge due to the two ounces of cocaine discovered in his residence at the time of his arrest. In the case before us at this time, the Defendant was arrested on October 20, 2010, and charged with two counts of Corrupt Organizations, and one count of Conspiracy to Deliver Cocaine allegedly stemming from his drug activity prior to aforementioned 2007 arrest.

At the time of Defendant's 2007 arrest, he provided investigators with a statement in which he indicated that he was involved in a drug distribution ring. *See* Transcript of January 26, 2011 Hearing at 13. That statement was read into the record at the Habeas hearing before this Court on January 26, 2011. In that 2007 statement, he identified Brent Rafferty, street name "B," as his source of cocaine. *Id.* He met Rafferty at the Providence Barber Shop on West Market Street, Scranton. *Id.* at 14. Individuals involved in drug trafficking would frequent the barber shop.

---

* Retired Senior Judge assigned to the Superior Court.

** Former Justice specially assigned to the Superior Court.

*Id.* During the eight months preceding his arrest he purchased one ounce quantities on a weekly basis from Rafferty, and then distributed the cocaine to his customers. Rafferty purchased the drugs in New York City, and he would contact Rafferty by cellular telephone. *Id.* He also purchased drugs from Rafferty's girlfriends, one who lived on Pond Avenue, and one who lived on Washburn Street, Scranton. *Id.* at 13. He also engaged in drug transactions at Fresno's restaurant and Uno's restaurant in Dickson City. *Id.* at 15. The statement provided the names of the Defendant's previous supplier, namely Walter Pearson. *Id.* at 14.

The Defendant testified that he provided the statement and cooperated with the Office of the Attorney General because he had been promised leniency, and that no new charges would be filed against him. *Id.* at 75. The defendant also testified that he attempted to work with Agent [Joseph] Solarczyk, but he was unable to make any purchases for the Attorney General's Office due to the public nature of his arrest. *Id.* at 76.

The testimony presented by the Commonwealth at the January 26, 2011 hearing reveals that Tyson Joyner was the overall target of the Attorney's General Office at the time the Defendant was initially arrested in 2007. *Id.* at 47. Agent [Catherine] Bianchi testified that she became aware that the Defendant was involved in a drug trafficking ring with Tyson Joyner and Brent Rafferty only as a result of the Grand Jury investigation. *Id.* at 51. Agent Bianchi further testified that the Defendant's statement alone did not provide a sufficient basis for corrupt organization charges. *Id.* at 53. While she suspected that a corrupt organization existed, she needed more than allegations to justify charges. *Id.* at 53, 54. However, both Agent

Bianchi and Supervisor Jerome Smith testified that the Defendant's statement indicated that he was involved in drug trafficking with a group of individuals. *Id.* at 65, 70.

A State Wide Investigating Grand Jury was convened to investigate narcotics trafficking in Lackawanna County after the 2007 initial arrest of the Defendant. Over a hundred individuals testified before the grand jury. Supervisor Jerome Smith testified that the Defendant was called before the State Wide Investigating Grand Jury to verify the statement that he had provided, linking himself and Brent Rafferty (among others) to cocaine trafficking in the area. *Id.* at 72, 73. The Defendant had agreed to testify before the grand jury as part of his cooperation, however, prior to his appearance, he invoked his Fifth Amendment rights.

The Defendant ultimately pled guilty to Possession with Intent to Deliver a Controlled Substance (cocaine), and was sentenced on April 1, 2008 to three to six years incarceration. *Id.* at 42. The Defendant later was placed in the State Intermediate Punishment Program. The Commonwealth withdrew the remaining charges at the time of sentencing. The Defendant successfully completed the State Intermediate Punishment Program.

On September 22, 2010, the 29th State Wide Investigating Grand Jury handed down Presentment Notice # 45, recommending criminal charges against twenty-two defendants. The Defendant was included in the group. On October 20, 2010, the Defendant was arrested and charged with two counts of Corrupt Organization, and one count of Conspiracy to Deliver Cocaine stemming from his

narcotic trafficking activity prior to his 2007 arrest.

Trial Court Opinion, 5/18/11, at 1–4.

Appellee filed a petition for writ of *habeas corpus* arguing that prosecution of the 2010 charges was barred by 18 Pa.C.S. § 110. Following a hearing, the distinguished trial judge, the Honorable Vito P. Geroulo, agreed and granted relief. The Commonwealth filed the within appeal, raising one issue for our review:

> Whether The Trial Court Erred in Holding That The Current Prosecution Is Barred By 18 Pa.C.S.A. § 110(1)(ii), Where The Prosecution Did Not Arise From The Same "Criminal Episode" As That Term Is Legally Defined, Nor Was The Commonwealth Fully Aware Of The Full Scope Of The Corrupt Organizations And Conspiracy Charges Before The Resolution Of The Former Charges?

Commonwealth's brief at 5.

■ "Our standard of review of issues concerning [S]ection 110 is plenary." *Commonwealth v. Reid*, 2012 PA Super 2, 35 A.3d 773, 776 (Pa.Super.2012). Section 110(1)(ii) provides:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:
>
> . . . .
>
> (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was

known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense;

18 Pa.C.S. § 110(1)(ii). The policies served by the statute are two-fold: to protect accused persons from governmental harassment of undergoing successive trials for offenses stemming from the same episode, and to promote judicial economy and finality by avoiding repetitious litigation. *Commonwealth v. Anthony*, 553 Pa. 55, 717 A.2d 1015, 1018–19 (1998). "By requiring compulsory joinder of all charges arising from the same criminal episode, a defendant need only 'once run the gauntlet' and confront the awesome resources of the state." *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177, 180 (1983).

■ The test for whether a former prosecution bars a subsequent prosecution pursuant to Section 110 was set forth in *Commonwealth v. Fithian*, 599 Pa. 180, 961 A.2d 66 (2008). Four elements are required:

> (1) the former prosecution must have resulted in an acquittal or conviction;
>
> (2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;
>
> (3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and
>
> (4) the current offense occurred within the same judicial district as the former prosecution.

*Id.* at 72.

■ The dispute herein focuses on the second and third prongs of the *Fithian* test, it being undisputed that the former

prosecution resulted in a guilty plea, which is equivalent to a conviction, and that all offenses occurred in the same judicial district. The second prong involves whether the current prosecution was based on the same criminal conduct or criminal episode as the former prosecution. A criminal episode has been defined as "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." *Commonwealth v. Schmidt*, 919 A.2d 241, 246 (Pa.Super.2007). In order to determine whether various acts constitute a single criminal episode, one must consider the logical relationship between the acts, *i.e.*, whether there is a substantial duplication of issues of law and fact, and whether the acts are temporally related. *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177, 183 (1983).

The Commonwealth contends that Appellee failed to establish that a logical relationship existed between the former and current prosecutions. The Commonwealth insists that the difference in the evidence that would be presented is "quite significant," the former prosecution being limited to specific instances of possession with intent to deliver; the latter being focused on numerous eyewitnesses who would testify generally as to Appellee's drug trafficking over a period of years. Commonwealth's brief at 14. The Commonwealth characterizes any duplication as "*de minimis.*" *Id.* Additionally, the Commonwealth argues that the former prosecution was limited to a single day in 2007, while "the present charges are based upon criminal activity alleged to have occurred between May 1, 2006 and March 31, 2010." *Id.* at 15.

Appellee counters that the corrupt organization and conspiracy charges pertain only to his drug dealings with Brent Rafferty and others in 2006 and 2007, detailed in a statement he provided following his 2007 arrest on drug charges. Support for his position is found in the grand jury presentment, which was based on Agent Catherine Bianchi's testimony referencing his sale of cocaine on two occasions, the subject of the prior charges. In addition, she summarized Appellee's 2007 signed statement detailing his weekly drug purchases from Rafferty, the source of Rafferty's supply, and the role of the Providence Barber Shop as the center for the drug activity in 2007. Grand Jury Presentment No. 45, 9/21/10, at 4. Appellee also directs our attention to the fact that the testimony of the witnesses at the preliminary hearing on the 2010 charges, namely Rafferty, Lisa Richardson, and the Agent who took his statement in 2007, related solely to events prior to his 2007 prosecution and which he admitted in his statement. Moreover, Rafferty and Richardson testified that all of their dealings with Appellee ceased when he was arrested in 2007.[1]

The trial court applied the logical and temporal approach and concluded that the 2007 and 2010 charges arose from the same criminal episode. Trial Court Opinion, 5/18/11, at 10. The court relied upon *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755, 761 (1995), for the proposition that "where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication

---

1. While the present charges purportedly relate to criminal activity between May 1, 2006 and **March 31, 2010**, Appellee was incarcerated after his sentencing on the former charges in April of 2008. There was no evidence linking him to any criminal activity after his 2007 arrest.

and waste of judicial resources." The trial court found that the 2010 charges stemmed from the same 2007 criminal activity that led to Appellee's arrest, guilty plea, and incarceration. Finding it apparent from Appellee's statement that he was involved in a drug distribution ring in 2007 when he was arrested for delivery of cocaine, the court concluded: "In 2007 the Defendant was charged with delivery of cocaine, and then in 2010, he was charged with conspiring to do so." *Id.* at 11.[2] We concur with the trial court's analysis.

We find the facts herein distinguishable from our recent decision in *Reid, supra,* where we held that two drug-related prosecutions constituted "multiple episodes of the same enterprise, rather than one continuous criminal episode." 35 A.3d at 779. Therein, the grand jury indictment in the second prosecution for two charges of possession with intent to deliver a controlled substance and one count of criminal conspiracy did not reference the earlier controlled drug buy that led to the first prosecution. Nor was there any indication in *Reid* that the confidential informant from the controlled buy was the same purchaser as in the latter case. Thus, the Court found that the charges did not arise out of the same factual nucleus and there was no duplication of witnesses and evidence.

In contrast, the present charges are intertwined with Appellee's admitted criminal activity in 2006 and 2007, and for which he was prosecuted in 2007. The bulk of the grand jury evidence implicating Appellee and leading to the instant prosecution referenced Appellee's 2007 arrest and statement. Additionally, the evidence at the preliminary hearing on the 2010 charges arose from the same factual nucleus as the 2007 prosecution. The trial court observed that, "[l]ogically, the Defendant should have been charged with Conspiracy and Corrupt Organizations back in 2007 when the Commonwealth became aware of his criminal activity." Trial Court Opinion, 5/18/11, at 11. We agree, and find that the conspiracy and corrupt organization charges were logically and temporally related to the earlier prosecution for possession with intent to deliver, satisfying the second prong of the test.

█ The Commonwealth next asserts that Appellee also failed to satisfy the third prong of the test, that the prosecutor was aware of the instant charges before the commencement of the first trial. It points to the fact that the grand jury investigation had not even begun when Appellee pled guilty and maintains that until it concluded its investigation and issued its presentment, the Commonwealth could not charge Appellee with the later crimes. Commonwealth's brief at 16. The trial court disagreed, however, finding that the Commonwealth was aware that the Defendant was engaged in the drug distribution operation when the 2007 guilty plea was entered.

Again, we agree with the trial court. We note first that the test is not whether Appellee could be charged, but whether prosecuting officers knew of the offense. *See* 18 Pa.C.S. § 110(1)(ii). Appellee provided a statement admitting his involvement in a drug trafficking organization long before the grand jury investigated his involvement. He named Brent Rafferty as his supplier and advised that he had eight

---

**2.** The target of the investigation, Tyson Joyner, made two sales to undercover agents in 2007, but was not arrested until 2010. Agent Jerome Smith acknowledged that Joyner was not arrested in 2007 because they "were looking for the whole organization." N.T. *Habeas Hearing,* 1/26/11, at 38–39. He confirmed that Appellee was arrested, at least in part, because they thought he would cooperate and assist in the investigation.

or nine customers. At the time of the statement, Rafferty was known to Agent Jerome Smith only as the owner of a vehicle that transported the target of the investigation, Tyson Joyner, to a drug buy conducted by Agent Catherine Bianchi in March of 2007. N.T. *Habeas* Hearing, 1/26/11, at 31, 32. When Agent Bianchi read Appellee's statement in September of 2007, in which he named Rafferty, a.k.a. "B," as his supplier, and provided Rafferty's cellular phone number, prices, and delivery locations, she admittedly knew that Rafferty was associated with Joyner in the sale of drugs. *Id.* at 33, 51. Such testimony seriously undermined Agent Bianchi's subsequent testimony that she only became aware that Appellee was involved in a drug trafficking ring with Tyson Joyner and Brent Rafferty *as a result of* the grand jury investigation. *Id.* at 51. Furthermore, it was consistent with the concessions of Agent Bianchi and her supervisor, Jerome Smith, that Appellee's earlier statement indicated that he was involved in drug trafficking with a group of individuals. *Id.* at 65, 70.

We agree with the trial court that the corrupt organization and conspiracy charges arose from the same criminal episode as the former prosecution, and that the appropriate prosecuting officer knew of the criminal conduct, which is the subject of the present prosecution, at the time of Appellee's guilty plea. Accordingly, the trial court properly applied Section 110 and dismissed the charges, and we affirm.

Order affirmed.