J-S34016-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JIMMY CARNES | |
| Appellant | No. 1499 WDA 2017 |

Appeal from the Judgment of Sentence April 28, 2017
in the Court of Common Pleas of Venango County
Criminal Division at No: CP-61-CR-0000252-2016

BEFORE:  BOWES, STABILE, AND STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    FILED DECEMBER 31, 2018

Appellant, Jimmy Carnes, appeals from his judgment of sentence of imprisonment for being a felon in possession of a firearm, conspiracy, and drug-related offenses.[1]  Appellant argues that the trial court erred in denying his motion to dismiss all charges under Pennsylvania's compulsory joinder statute, 18 Pa.C.S.A. § 110.  We reverse and remand for dismissal of all charges.

The trial court summarized the factual and procedural history of this case as follows:

The charges in this matter arise out of an alleged hit-and-run incident that occurred on February 12, 2016 in Victoria Township,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105 and 903 and 35 P.S. § 780-113(32) and (35), respectively.

Venango County, Pennsylvania. While travelling southbound on PA Route 8, [Appellant]'s vehicle allegedly hit another driver's vehicle. Instead of stopping to survey the damage and confer with the driver whose vehicle he hit, [Appellant] continued driving. This conduct prompted the victim of the hit-and-run to call 911 to report the incident and to follow [Appellant]'s vehicle while awaiting police assistance. Polk Borough Police Sergeant Alan Heller responded to the call and initiated a stop of [Appellant]'s vehicle to investigate the hit-and-run. During the stop, Sergeant Heller found a "small baggy of cocaine" wedged in between the vehicle's front seats.[2] Sergeant Heller accordingly arrested [Appellant], the driver, and another man who was sitting in the passenger seat at the time Sergeant Heller conducted the stop.

Following [Appellant]'s arrest, he was lodged in Venango County Jail to await criminal prosecution for events that transpired on February 12, 2016. The Commonwealth initially charged [Appellant] with possession of a controlled substance (cocaine), possession of drug paraphernalia and multiple Vehicle Code summary offense violations. On February 24, 2016, [Appellant] pled guilty [at CP-61-CR-0000199-2016] to possession of drug paraphernalia and two of the vehicle code summary offense violations; the Commonwealth withdrew all other charges against [Appellant].

Following [Appellant]'s guilty plea, however, the Commonwealth brought additional firearm and drug-related charges against [Appellant], all of which stem from the events leading to [Appellant]'s February 12, 2016 arrest. The Commonwealth brought these additional charges after Leon Wagner, [Appellant]'s Venango County Jail cellmate while [Appellant] awaited criminal prosecution for his first criminal case, relayed inculpatory statements made by [Appellant] to a Venango County sheriff's deputy. Specifically, Wagner told the deputy that [Appellant] stated that [Appellant] was happy that he was able to throw a box containing a handgun and drugs out of his vehicle's window before Sergeant Heller effectuated the stop. Based on Wagner's statement, Pennsylvania State Police searched for the described items and recovered said items in the same geographic location

_____

[2] Sergeant Heller also recovered $2,700.00 in cash during the search. Notes of Testimony ("N.T."), 3/14/17, at 24-25.

Sergeant Heller arrested [Appellant] on March 1, 2016. As a result of finding the described physical evidence, the Commonwealth initiated felony and misdemeanor drug charges for the drugs found on the side of the road and a felony firearm charge.

On April 27, 2016, a preliminary hearing was held where the parties developed testimony from Leon Wagner and Sergeant Heller. On July 6, 2016, [Appellant] filed a Motion to Dismiss the new charges against him, contending that the former prosecution for which he pled guilty barred this prosecution pursuant to 18 Pa. C.S.[A.] § 110. On September 27, 2016, this Court issued an order wherein it denied [Appellant]'s Motion to Dismiss because it found that the subsequent charges brought against [Appellant] were not logically related to the former prosecution. This case subsequently went to a non-jury trial [at CP-61-CR-0000252-2016] where [Appellant] was found guilty of the new charges and consequently sentenced.

Trial Ct. Op., 9/5/17, at 1-3 (citations to notes of testimony omitted).

The trial court omitted several important details. Appellant's cellmate, Wagner, provided the tip on February 16, 2016, four days after Appellant's arrest and eight days before his guilty plea in the first case. Trial Transcript ("T.T."), at 27. During the preliminary hearing and trial in the second case, Wagner testified that he gave the tip to a sheriff's deputy and to Sergeant Heller, the same officer who arrested Appellant in the first case. Preliminary Hearing Transcript, 4/27/16, at 29, 31-32; T.T., at 34-37. Based on Wagner's tip, Sergeant Heller and other officers began searching for the box on Route 8. Although wintry conditions and the amount of snow on the ground impeded the search, Sergeant Heller found part of the box on February 20, 2016, four days before Appellant's guilty plea in the first case. T.T., at 28-30. Sergeant Heller testified that "we got the preliminary hearing [in the first case]

continued for one week" as law enforcement officers searched Route 8. Id.

at 27. Sergeant Heller agreed that at the time of Appellant's guilty plea in the

first case, the investigation on Route 8 was ongoing. Id. at 29.

The trial court acknowledged that the two cases were "temporally

related" but found that they were not "logically related."

> In the first prosecution, there was no evidence presented to this
> [c]ourt at trial because [Appellant] pled guilty before trial.[fn] At
> the non-jury trial for the subsequent prosecution, the
> Commonwealth called arresting officer Sergeant Heller to testify,
> a different police officer who testified to recovery of the firearm
> and additional drugs found at the scene days after [Appellant]'s
> arrest for purposes of establishing chain of custody of this new
> physical evidence, the jailhouse informant Leon Wagner who
> tipped the sheriff's deputy off that [Appellant] threw a handgun
> and other drugs out of his vehicle's window before pulling over for
> Sergeant Heller, and lab analysis confirming that the additional
> drugs found were, in fact, illegal narcotics. Because the second
> prosecution involved the calling of different, additional witnesses,
> the establishment of chains of custody for physical evidence
> obtained against [Appellant] separate from the cocaine found in
> [Appellant]'s vehicle, and introduction of expert testimonial
> evidence establishing that additional and different drugs—ecstasy
> pills—were found on the side of the road after [Appellant] threw
> them from his vehicle's window, we find that there was no
> substantial duplication of factual or legal issues in the second
> prosecution.
>
> [fn]This [c]ourt declines to hazard a guess as to the types of evidence
> that Commonwealth would have presented against [Appellant] had the
> first prosecution went to trial. It is not the role of this [c]ourt to make
> such hypotheses.

Id. at 6-7 (footnote in original).

Appellant filed timely post-sentence motions, which the court denied,

and a timely notice of appeal. Both Appellant and the trial court complied with

Pa.R.A.P. 1925. Appellant raises one argument in this appeal: "Whether the

trial court erred in denying the Pre- and Post-trial motions seeking dismissal of the charges on the basis that the prosecution was barred by 18 Pa. C.S.A. Section 110 (1)(ii)?" Since the issue presents a question of law, our standard of review is de novo and our scope of review is plenary. Commonwealth v. Kolovich, 170 A.3d 520, 523 (Pa. Super. 2017).

The compulsory joinder rule, 18 Pa.C.S.A. § 110, entitled "When prosecution barred by former prosecution for different offense," provides in pertinent part:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> > (i) any offense of which the defendant could have been convicted on the first prosecution;
> >
> > (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or
> >
> > (iii) the same conduct, unless:
> >
> > > (A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

- 5 -

> (B) the second offense was not consummated when the former trial began.

Id. The rule "is a legislative mandate that a subsequent prosecution for a violation of a provision of a statute that is different from a former prosecution, or is based on different facts, will be barred in certain circumstances." Kolovich, 170 A.3d at 524. Its purpose is "(1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation." Id. To that end, "our High Court held that the legislature intended that the compulsory joinder statute be limited to mandating joinder only of those offenses occurring in a single judicial district, even when offenses were part of the same criminal episode." Id.

Section 110(1)(ii), the relevant provision for this appeal, bars subsequent prosecution if all of the following four prongs are satisfied:

(1) the "former prosecution resulted in an acquittal or conviction";

(2) the current prosecution "is based on the same criminal conduct or [arose] from the same criminal episode";

(3) the "appropriate prosecuting officer" in the subsequent trial was aware of the conduct underlying the subsequent charges before the first trial; and

(4) all charges are "within the same judicial district" as the former prosecution.

Id.

Here, prongs (1) and (4) are satisfied, because Appellant's first prosecution resulted in a guilty plea and conviction on February 24, 2016, and all charges in the present case were within the same judicial district as his first prosecution.

The test for prong (3) "is not whether [the defendant] could be charged, but whether prosecuting officers knew of the offense" underlying the subsequent charges before the first trial. Commonwealth v. George, 38 A.3d 893, 898 (Pa. Super. 2012). George teaches that "prosecuting officers" include law enforcement officers as well as prosecuting attorneys. Prong (3) was satisfied in George because agents of the Attorney General's Office knew of the offense underlying the charges in the defendant's second case before commencement of his first trial. Id. at 898-99. We reasoned:

> Appellee provided a statement admitting his involvement in a drug trafficking organization long before the grand jury investigated his involvement. He named Brent Rafferty as his supplier and advised that he had eight or nine customers. At the time of the statement, Rafferty was known to Agent Jerome Smith only as the owner of a vehicle that transported the target of the investigation, Tyson Joyner, to a drug buy conducted by Agent Catherine Bianchi in March of 2007. When Agent Bianchi read Appellee's statement in September of 2007, in which he named Rafferty, a.k.a. "B," as his supplier, and provided Rafferty's cellular phone number, prices, and delivery locations, she admittedly knew that Rafferty was associated with Joyner in the sale of drugs. Such testimony seriously undermined Agent Bianchi's subsequent testimony that she only became aware that Appellee was involved in a drug

- 7 -

trafficking ring with Tyson Joyner and Brent Rafferty as a result of the grand jury investigation. Furthermore, it was consistent with the concessions of Agent Bianchi and her supervisor, Jerome Smith, that Appellee's earlier statement indicated that he was involved in drug trafficking with a group of individuals.

Id. (citations omitted).

Here, as in George, prong (3) is satisfied because the same law enforcement officer, Sergeant Heller, investigated both cases against Appellant. Sergeant Heller was the arresting officer in the first case. He learned about the conduct underlying the second case prior to Appellant's guilty plea in the first case, because he obtained the tip from Appellant's cellmate and recovered part of the box several days before the guilty plea.[3]

Prong (2) requires us to examine whether the present prosecution was based on the same criminal conduct or arose from the same criminal episode as the first prosecution. "[I]n defining what acts constitute a single criminal

_____

[3] Despite the George court's willingness to include law enforcement officers within the scope of "appropriate prosecuting officer[s]," one might ask whether the plain meaning of this term is limited to prosecutors such as District Attorneys or the Attorney General. In today's decision, we must follow our published opinion in George and extend this term to Sergeant Heller. In a future case, this issue might warrant en banc review.

Had this term only applied to prosecutors, we would have remanded this case for an evidentiary hearing as to whether the prosecuting attorney knew about the conduct underlying Appellant's second case before his guilty plea in the first case. The present record does not resolve this question. Sergeant Heller testified that during his investigation, "we" obtained a continuance of the preliminary hearing in Appellant's first case. T.T. at 27. It is unclear whether "we" included the prosecutor. In view of George, however, further hearings on this question are unnecessary.

- 8 -

episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered." Commonwealth v. Hude, 458 A.2d 177, 181 (Pa. 1983). The purpose of this rule is to "protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode." Id. at 180. More recently, our Supreme Court elaborated as follows:

> [T]he determination of whether the logical relationship prong of the test is met turns on whether the offenses present a substantial duplication of issues of fact and law. Such a determination depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution. There is a substantial duplication of issues of fact if "the Commonwealth's case rest[s] solely upon the credibility of [one witness]" in both prosecutions. There is no substantial duplication if "proof of each individual instance of possession and delivery in each county . . . require the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody[,]"or if "there were three victims in three different counties requiring three different investigations, and different witnesses were necessary at each trial." When determining if there is a duplication of legal issues, a court should not limit its analysis to a mere comparison of the charges, but should also consider whether, despite "the variation in the form of the criminal charges," there is a "commonality" of legal issues within the two prosecutions. It should be remembered, however, "[t]he mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds." Finally, in considering the temporal and logical relationship between criminal acts, we are guided by the policy considerations § 110 was designed to serve, which "must not be interpreted to sanction 'volume discounting[,]' [procedural maneuvering,] or . . . to label an 'enterprise' an 'episode.'"

Commonwealth v. Reid, 77 A.3d 579, 585-86 (Pa. 2013).

- 9 -

Commonwealth v. Anthony, 717 A.2d 1015 (Pa. 1998), provides an instructive example of this test. There, the defendant committed a series of burglaries with juvenile cohorts. The Corry Police Department charged him with corruption of minors alleging, among other things, that he enticed and encouraged the juveniles to commit thefts and residential burglaries. The defendant pled guilty and was sentenced. Thereafter, the Pennsylvania State Police filed theft and burglary charges against the defendant. The Supreme Court held that the compulsory joinder rule barred the second prosecution:

> [A] substantial duplication of issues of law and fact exists. The evidence to support appellant's original conviction is the statement of appellant as taken by the Corry Police; the testimony and/or statements of Steven, Lucas and Sue Ann and Angela; the parents of the juveniles; and the Corry Police officers involved in the investigation. In the present prosecution all of the above witnesses will again be required to present the same testimony. Given that a high percentage of the testimony from the first trial must be repeated in the second trial, a substantial duplication of factual issues is obviously present.
>
> The only additional witnesses that would be called in the present trial that were not needed in the first trial are the victim of the burglary and the State Police. Although two different police departments are involved there is nothing of record indicating that two different investigations were ongoing, independent of each other, which led to the two separate prosecutions. To the contrary, the Corry Police were in possession of all relevant incriminating information regarding all the criminal activity set forth in both Informations prior to any involvement by the State Police. The Corry Police chose to forward the information to the State Police. The dual involvement of two different law enforcement offices is not sufficient to preclude joinder of charges given the facts of this case. As for the legal issues, appellant's first conviction for corrupting the morals of the minors was grounded on his encouraging and enticing the minors to commit burglaries and thefts. The second Information also charges burglary and theft, the variation in the form of the criminal

charges cannot disguise the commonality of the legal issues within the two informations. Thus, we find that the present charges did arise from the same criminal episode as the first set of charges as all of the criminal acts are temporally and logically related.

Id. at 1019-20.

Here, as in Anthony, strong logical relationships exist between Appellant's two cases. Appellant's first case involved a traffic stop that led to discovery of drugs in his possession. Had this case gone to trial, Sergeant Heller, the arresting officer, would have testified about the radio dispatch and vehicle stop, where and when the stop took place, his observations during the stop, the drugs and money he found during the stop and where he found them. Sergeant Heller would also have identified Appellant as the vehicle driver and identified the Commonwealth's exhibits in order to enter them into evidence.[4] All of this evidence was introduced during trial in the second case through the same law enforcement officer, Sergeant Heller, so there was "substantial duplication" between the facts relevant to both cases. Id. at 1019. To the extent there was additional evidence in the second case—such as Sergeant Heller's investigation following Appellant's arrest, the tip from Wagner, and the discovery of the box by the roadside containing drugs—these additional

_____

[4] The trial court overstates the matter by claiming that it could not "hazard a guess" as to what evidence the Commonwealth would have introduced during trial in the first case. Trial Ct. Op. at 6 n.3. No guesswork was necessary. The Commonwealth would have introduced Sergeant Heller's testimony and authentication of the physical evidence because there was no other way to prove these charges.

facts were byproducts of the first case. Appellant discarded the box while Sergeant Heller was pulling him over on the highway, the same traffic stop that gave rise to the first case. Four days after Appellant's arrest, Wagner told Sergeant Heller about Appellant's confession. Wagner's tip led to the search along the roadside that culminated in the discovery of the box containing the drugs. Finally, the charges in both cases are related: Appellant was charged in both cases with possession of controlled substances in his possession at the time of the traffic stop. These temporal and logical connections demonstrate that the first and second cases arose from the same episode, thereby satisfying prong (2).[5]

This case is distinguishable from other drug cases in which prong (2) was not satisfied because the cases in question arose from different episodes. For example, in Reid, the Supreme Court held that two cases involving drug sales did not arise from the same episode, because

> different evidence was required to establish the offenses alleged in each case. The witnesses for the 2007 case were Detective Shoemaker, another member of the Drug Task Force, and the chemist who tested the cocaine—its locale involved a convenience store and the rear of the Hilltop Bar. The 2010 case, which alleged acts before and after the prior delivery, involved four witnesses in addition to Detective Shoemaker. Those acts occurred inside a

_____

[5] Perhaps inadvertently, the trial court itself suggests this result. As stated above, our Supreme Court said that the purpose of the compulsory joinder rule is to prevent "successive trials for offenses stemming from the same criminal episode." Hude, 458 A.2d at 180. Echoing Hude, the trial court states that all charges in the second case "stem" from the events leading to Appellant's arrest in the first case. Trial Ct. Op. at 2.

bar called "Two Tuesdays" and in appellant's residence, and at times involved a middleman.

Id. at 586. In Commonwealth v. Bracalielly, 658 A.2d 755 (1995), the defendant twice sold cocaine to a confidential informant in Allegheny County and once sold cocaine to the same confidential informant in Butler County. The Supreme Court held that the Butler County drug sale was not part of the same criminal episode as the two sales in Allegheny County. Butler County and Allegheny County authorities were each conducting separate undercover investigations of the defendant, so "proof of each individual instance of possession and delivery in each county would not rest solely on the credibility of a single witness, but rather, would require the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody." Id. at 762. The sales in Reid and Bracalielly took place in different times and places. Different evidence was necessary to establish the defendant's crimes in each case. Here, in contrast, both cases arise from the same traffic stop, and the events in the first case were foundational to the second case. The same police officer, Sergeant Heller, investigated both cases, was a central witness in the second case, and would have been a central witness had the first case gone to trial.

For these reasons, we hold that all four prongs of the compulsory joinder test are satisfied in this case, and the trial court erred by declining to dismiss all charges against Appellant. To be clear, our decision does not affect the judgment of sentence in the first case (CP-61-CR-0000199-2016) in any way.

Judgment of sentence reversed. Case remanded with instructions to dismiss all charges against Appellant at CP-61-CR-0000252-2016. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/2018