J-A28031-24          2025 PA Super 75

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KHALEEQ AMES | : | No. 881 EDA 2024 |

Appeal from the Order Entered March 4, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008723-2023

BEFORE:  PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

OPINION BY NICHOLS, J.:                                    **FILED MARCH 26, 2025**

The Commonwealth appeals from the order granting Appellee Khaleeq Ames's motion to bar prosecution on the grounds that the Commonwealth violated the compulsory joinder rule.[1]  On appeal, the Commonwealth contends that the trial court erred when it entered an order barring prosecution, contending that a logical relationship did not exist between the two prosecutions at issue.  After careful review, we vacate the trial court's order and remand for further proceedings.

The trial court set forth the following findings of fact:

In July 2021, agents from the Pennsylvania Attorney General's Office began investigating a string of firearm purchases made by [Appellee's] girlfriend, Tamyia Burrell.  The investigation, which lasted approximately [two] years, also involved assistant district attorneys.  In September 2021, Ms. Burrell reported that [Appellee] stole [seven] of her firearms.  In a conversation with agents on October 4, 2021, Ms. Burrell admitted to purchasing

_____

[1] 18 Pa.C.S. § 110.

[three] of those firearms for [Appellee] and giving him a [fourth], but maintained that [Appellee] stole the remaining [three] firearms[]. The investigation ultimately revealed that between April 2, 2021 and July 27, 2021, Ms. Burrell and her sister purchased [thirteen] firearms, including a Glock 45 with the serial number BSTK526 (the Glock), and transferred them to [Appellee]. Ms. Burrell purchased [eleven] of the firearms, and her sister purchased the remaining [two].

On October 13, 2021, Philadelphia police officers responded to a domestic at the home of Ms. Burrell. Police discovered the Glock in [Appellee's] bag. As a result of this incident, [Appellee] was arrested and charged with [persons not to possess firearms[2] at Docket No.] CP-51-CR-0001899-2022 [(Docket No. 1899-2022)]. On August 2, 2022, [Appellee] entered into a non-negotiated guilty plea before [the trial court], and on October 12, 2022, [the trial court] sentenced [Appellee] to [three] to [six] years of confinement, followed by [five] years of probation.

On October 14, 2021, the day after [Appellee] was arrested on [Docket No. 1899-2022], agents executed a search warrant at Ms. Burrell's home. Following her arrest, Ms. Burrell eventually admitted that she purchased [eleven] firearms for [Appellee]. On September 15, 2023, [Appellee] was arrested on the instant docket as a result of the straw purchasing investigation. [Appellee] was charged by way of an investigating grand jury. The facts set forth in the grand jury presentment include the facts of [Docket No. 1899-2022].

Trial Ct. Op., 3/7/24, at 1-2.

The Commonwealth charged Appellee with the following offenses: thirteen counts of persons not to possess firearms, twelve counts each of sale or transfer of firearms, unsworn falsification to authorities, tampering with public records, and one count each of conspiracy and false reports.[3] Appellee

---

[2] *See* 18 Pa.C.S. § 6105(a)(1).

[3] 18 Pa.C.S. §§ 6105(a)(1), 6111(g)(4)(ii), 4904(a)(1), 4911(a)(1), 903(c), and 4906(a), respectively.

filed a motion to dismiss on January 26, 2024, on the grounds that the charges filed in the instant case arose from the same events that led to Appellee's prior prosecution at Docket No. 1899-2022. *See* Appellee's Motion to Dismiss, 1/26/24, at 2 (unpaginated).

Following a hearing, the trial court granted Appellee's motion to dismiss on March 4, 2024, and dismissed the charges against Appellee with prejudice. *See* N.T. 3/4/24, at 8. The Commonwealth timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed Rule 1925(a) statement incorporating the March 7, 2024 opinion in support of its order granting Appellee's motion to dismiss.

The Commonwealth raises the following issue for our review:

Did the [trial] court err in granting [Appellee's] motion to dismiss pursuant to 18 Pa.C.S. § 110, by looking only at the temporal relationship between the crimes and not the logical distinction that the former crime involved possession of a single firearm during a domestic dispute, while the current charges stem from widescale straw purchases of many firearms, and there is no substantial duplication in the facts or law of the prosecutions?

Commonwealth Brief at 3.

In its sole issue on appeal, the Commonwealth contends that the trial court erred when it dismissed over fifty charges relating to Appellee's "widescale illegal purchasing of firearms simply because he was convicted of possessing a single firearm during a domestic dispute in the same time frame." Commonwealth's Brief at 9. Specifically, the Commonwealth argues that the trial court focused solely on the temporal relationship between the charges

filed at the instant docket and at Docket No. 1899-2022, rather than "whether there is a substantial duplication of issues of fact or law between the [two] prosecutions." **Id.** at 13. The Commonwealth further argues that the offense at issue at Docket No. 1899-2022 "involved a single incident at a single location and focused on a crime against a single person," while the charges in the instant case involved a broader investigation involving several different incidents and people. **Id.** at 13-14.

"Where the relevant facts are undisputed, the question of whether prosecution is barred by the compulsory joinder rule . . . is subject to plenary and *de novo* review." **Commonwealth v. Copes**, 295 A.3d 1277, 1279 (Pa. Super. 2023) (quoting **Commonwealth v. Brown**, 212 A.3d 1076, 1082 (Pa. Super. 2019) (citation omitted)).

Section 110 of the Crimes Code sets forth the compulsory joinder rule, which prohibits a subsequent prosecution following a former prosecution for a different offense if four elements are met: (1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution; (3) the prosecutor was aware of the instant charges before the trial on the former charges began; and (4) the instant offense occurred within the same judicial district as the former prosecution. **Commonwealth v. Perfetto**, 207 A.3d 812, 821 (Pa. 2019); **see also** 18 Pa.C.S. § 110(1)(ii). In **Perfetto**, the defendant was charged with three counts of driving under the influence (DUI) and a summary traffic offense arising out the same

criminal episode. *Perfetto*, 207 A.3d at 815. The *Perfetto* Court held that the defendant's conviction before the Philadelphia Municipal Court's Traffic Division for the summary traffic offense barred his subsequent prosecution for DUI. *See id.* at 822.

Following *Perfetto*, our Supreme Court decided *Commonwealth v. Johnson*, 247 A.3d 981 (Pa. 2021). In that case, the defendant was charged with possession of heroin with intent to deliver (PWID), a felony; possession of heroin, a misdemeanor; and a summary traffic offense arising from the same criminal episode. *Johnson*, 247 A.3d at 982. Like in *Perfetto*, the defendant was convicted of the summary traffic offense in a separate proceeding. *See id.* The defendant then sought dismissal of the drug charges pursuant to Section 110. *See id.* Our Supreme Court explained that "the Commonwealth must generally assure that known offenses are consolidated at the common pleas level, when they arise out of a single criminal episode and occur in the same judicial district." *Id.* at 987. The Supreme Court remanded the case for dismissal of the PWID charge. *Id.*

In the instant case, the Commonwealth notes that only the second element as identified by the *Perfetto* Court is at issue on appeal—whether the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution. *See* Commonwealth's Brief at 9; *Perfetto*, 207 A.3d at 821; 18 Pa.C.S. § 110(1)(ii). This Court has held as follows:

> Whenever examining whether a defendant has satisfied the second prong, which is also known as the logical relationship prong, courts should consider both the "'temporal' and 'logical' relationship between the charges to determine whether they arose from a 'single criminal episode.'" *Commonwealth v. Reid*, 77 A.3d 579, 582 (Pa. 2013) (citing *Commonwealth v. Hude*, 458 A.2d 177, 181 (Pa. 1983)). The logical relationship prong of the test requires "a substantial duplication of issues of law and fact." *Reid*, 77 A.3d at 582-83 (reasoning that, "an absolute identity of factual backgrounds" is not required but "a mere *de minimis* duplication of factual and legal issues is insufficient to establish a logical relationship").

*Commonwealth v. Forrester-Westad*, 282 A.3d 811, 822 (Pa. Super. 2022) (some formatting altered).

> The *Reid* Court reiterated that

> the determination of whether the logical relationship prong of the test is met turns on whether the offenses present a **substantial** duplication of issues of fact and law. Such a determination depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution. . . . When determining if there is a duplication of legal issues, a court should not limit its analysis to a mere comparison of the charges, but should also consider whether, despite "the variation in the form of the criminal charges," there is a "commonality" of legal issues within the two prosecutions. It should be remembered, however, the mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds. Finally, in considering the temporal and logical relationship between criminal acts, we are guided by the policy considerations Section 110 was designed to serve,[4] which must not be interpreted to sanction volume

_____

[4] This Court has recognized that the policy objectives of Section 110 are: "(1) to protect a person accused of crimes from governmental harassment by being forced to undergo successive trials for offenses stemming from the same criminal episode, and (2) to ensure judicial economy." *Forrester-Westad*, 282 A.3d at 821 (citations omitted).

> discounting, procedural maneuvering, or . . . to label an enterprise an episode.

***Reid***, 77 A.3d at 585-86 (emphasis original, citations omitted, and formatting altered).

On appeal, the Commonwealth directs this Court to our Supreme Court's decisions in ***Reid*** and ***Commonwealth v. Bracalielly***, 658 A.2d 755 (Pa. 1995), while Appellee directs us to this Court's decision in ***Commonwealth v. George***, 38 A.3d 893 (Pa. Super. 2012). ***See*** Commonwealth's Brief at 10-12; Appellee's Brief at 13-16.

In ***Bracalielly***, the defendant was arrested and charged following a series of drug transactions between August 7 and August 20, 1990, involving the same confidential informant. ***Bracalielly***, 658 A.2d at 757-59. Three of the transactions took place in Allegheny County, and two transactions took place in Butler County. ***See id.*** The defendant was charged separately in each county. ***See id.*** The defendant entered a guilty plea in Butler County and then subsequently "filed an omnibus pretrial motion in Allegheny County contending that his convictions in Butler County were for offenses arising out of the same criminal conduct as the Allegheny County charges and therefore, the Allegheny County charges were barred by 18 Pa.C.S. § 110." ***Id.*** at 759 (citation omitted).

Our Supreme Court concluded that the transactions in Allegheny County and Butler County were not part of the same criminal episode because of the independent involvement of two distinct law enforcement entities. ***Id.*** at 762.

The **Bracalielly** Court specifically noted that the two prosecutions required "the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody." **Id.** Our Supreme Court ultimately concluded that even though the same confidential informant was involved with both prosecutions, there was not a substantial duplication of issues of law and fact that would establish that a logical relationship existed between the two prosecutions. **Id.**

In **George**, the defendant was arrested and charged with two counts of delivery of a controlled substance in 2007 following two purchases from a confidential informant. **George**, 38 A.3d at 894. At the time of his arrest, the defendant provided statements to investigators that he was involved in a drug distribution ring. **Id.** As a result of these 2007 charges, the defendant entered a guilty plea to possession of a controlled substance with intent to deliver in 2008. **Id.** at 895.

After the defendant's 2007 arrest in **George**, an investigative grand jury was convened to investigate narcotics trafficking in Lackawanna County. **Id.** In 2010, the grand jury issued its presentment, recommending that criminal charges be filed against twenty-two people, including the defendant. **Id.** As a result, the defendant was arrested and charged with two counts of corrupt organizations and one count of conspiracy to deliver a controlled substance. **Id.** Conduct that took place prior to the defendant's 2007 arrest served as the basis for the 2010 charges. **Id.** at 895-96. The defendant filed a petition for a writ of *habeas corpus*, arguing that the Commonwealth was barred from

prosecuting him for the 2010 charges by Section 110. *Id.* at 896. The trial court granted relief. *Id.*

The Commonwealth in *George* argued that the defendant did not establish that there was a logical connection between the two prosecutions. *Id.* at 897. Specifically, the Commonwealth argued that the 2007 prosecution would have been limited to witnesses of a specific incident of possession of a controlled substance with intent to deliver, while the 2010 prosecution would have involved "numerous eyewitnesses who would testify generally as to [the defendant's] drug trafficking over a period of years." *Id.* (citation omitted). The Commonwealth further argued that the 2007 prosecution would be limited to one day in 2007, while the 2010 prosecution would have addressed activity alleged to have taken place over a nearly four-year period. *Id.*

The *George* Court concluded that the 2010 charges were "intertwined" with the defendant's criminal activity giving rise to the 2007 charges. *Id.* at 898. Specifically, the *George* Court noted:

> The bulk of the grand jury evidence implicating [the defendant] and leading to the [2010] prosecution referenced [the defendant's] 2007 arrest and statement. Additionally, the evidence at the preliminary hearing on the 2010 charges arose from the same factual nucleus as the 2007 prosecution. The trial court observed that logically, the defendant should have been charged with conspiracy and corrupt organizations back in 2007 when the Commonwealth became aware of his criminal activity. We agree, and find that the conspiracy and corrupt organization charges were logically and temporally related to the earlier prosecution for possession with intent to deliver, satisfying the second prong of the test.

*Id.* (citations omitted and some formatting altered).

After **George** was decided, our Supreme Court announced its decision in **Reid**. In **Reid**, the defendant was arrested in 2007 as the result of a controlled cocaine buy that took place in 2006. **Reid**, 77 A.3d at 581. Following his arrest, the defendant "confessed he was in the business of selling cocaine in the Lock Haven area, and his source was in New Jersey[,]" and entered a guilty plea to one count of possession of a controlled substance with intent to deliver. **Id.** Prior to the defendant entering his guilty plea, an investigative grand jury was convened. **Id.** In 2009, the grand jury issued its presentment, which implicated the defendant as a member of a drug distribution organization operating in the Lock Haven area. **Id.** "Specifically, the grand jury found that between 2006 and March 7, 2007, [the defendant] sold cocaine at his home and various bars, including the Two Tuesdays Bar located in Lock Haven. The presentment did not mention the 2007 case . . ." **Id.** As a result of the grand jury's presentment, the Commonwealth charged the defendant with two counts of possession of a controlled substance with intent to deliver and one count of conspiracy. **Id.** The defendant subsequently filed a motion to dismiss, alleging that the Commonwealth was barred from prosecuting the 2010 case pursuant to 18 Pa.C.S. § 110. **Id.**

Our Supreme Court concluded in **Reid** that different evidence was required to establish the elements of each offense alleged in the 2007 and the 2010 prosecutions. **Id.** at 586. Specifically, the **Reid** Court concluded:

> The witnesses for the 2007 case were Detective [Charles] Shoemaker, another member of the Drug Task Force, and the chemist who tested the cocaine—its locale involved a convenience

- 10 -

store and the rear of the Hilltop Bar. The 2010 case, which alleged acts before and after the prior delivery, involved four witnesses in addition to Detective Shoemaker. Those acts occurred inside a bar called "Two Tuesdays" and in [the defendant's] residence, and at times involved a middleman. In light of the foregoing, we conclude there is no substantial duplication of issues of fact or law; thus, the two prosecutions do not arise from the same criminal episode.

*Id.* (footnote omitted).

In the instant case, the trial court reached the following conclusion:

All of the firearms in the instant prosecution were purchased during the same 3.5 month period, and as part of the same straw purchasing scheme as the Glock. The facts of [Appellee's] 2022 case were included in the grand jury presentment, and [Appellee] was originally charged with [thirteen] counts of [persons not to possess firearms], one charge for each of the firearms listed in the presentment. It therefore appears that the Glock was explicitly included in the initial phases of the initial prosecution. Based on the foregoing, [the trial court] concludes that the charges of the instant prosecution and [Docket No. 1899-2022] are all part of the same criminal episode. The investigation into the straw purchasing scheme began several months before [Appellee] was arrested on [Docket No. 1899-2022], agents were aware [Appellee] was a part of the scheme as early as October 4, 2021, and the investigation had been going on for over a year at the time he entered his original guilty plea. All of the charges occurred within the same judicial district. As such, the requirements of [Section] 110 are satisfied, and the instant prosecution is barred.

Trial Ct. Op., 3/7/24, at 3.

Based on our review of the record, we are constrained to disagree with the trial court's conclusion. We conclude that the necessary relationship does not exist between Appellee's charge at Docket No. 1899-2022 and the charges filed in the instant case. *See Forrester-Westad*, 282 A.3d at 822. Indeed, we must consider the context of Appellee's arrest giving rise to the charge at

- 11 -

Docket No. 1899-2022, which was a police response to a domestic violence call. Upon Appellee's arrest giving rise to the charge filed at Docket No. 1899-2022, Appellee was found to be in possession of the Glock, which was purchased as part of the straw purchasing scheme later alleged by the Commonwealth at the instant docket. In other words, the case at Docket No. 1899-2022 involved a domestic violence issue and possession of a single gun. The instant case involves thirteen counts of persons not to possess firearms, twelve counts each of sale or transfer of firearms, twelve counts of unsworn falsification to authorities, twelve counts of tampering with public records, and one count each of conspiracy and false reports. Although the single Glock included in the matter at 1899-2022 was one of the multiple firearms included in the instant case, we cannot conclude that there is a "substantial duplication of issues of law and fact." *Forrester-Westad*, 282 A.3d at 822; *see also Reid*, 77 A.3d at 586. Our conclusion is consistent with the policy directives of Section 110 in that Appellee in the instant matter has not been forced to "run the gauntlet" of the criminal justice system by undergoing successive criminal prosecutions for offenses stemming from the same episode. *See Forrester-Westad*, 282 A.3d at 821; *George*, 38 A.3d at 896 (citing *Hude*, 458 A.2d at 180).

For these reasons, we reverse the trial court's order and remand this case for further proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/26/2025</u>